# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01496-SCT

*CHARLES E. PATE*

*v.*

*CONSECO LIFE INSURANCE COMPANY AND*
*JACK CREELY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/2006 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GRADY L. McCOOL, III |
| | JOSEPH E. ROBERTS, JR. |
| ATTORNEYS FOR APPELLEES: | JACOB MICHAEL JENKINS |
| | CHARLES E. GRIFFIN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 01/03/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., GRAVES AND RANDOLPH, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from an order granting summary judgment in the Circuit Court of Itawamba County. Because we find that the trial court erred in finding no genuine issue of material fact and in finding that Conseco is entitled to a judgment as a matter of law, we reverse and remand.

**FACTS**

¶2.     Charles Pate obtained a life insurance policy from Lamar Life Insurance Company on November 19, 1984. Bill Ogden was the company representative from Lamar, and Jack Creely was the agent involved in the transaction. Lamar Life later merged with Conseco Life Insurance Company in 1999. Hereinafter, all of the defendants will be referred to as "Conseco" for purposes of clarity. Pate had a planned monthly premium of $186.22 for the $50,000 policy. On or about August 21, 2001, Pate received a letter informing him that he would have to pay an increased premium of $743.56 or his policy would lapse.[1] Thereafter, Pate filed an action for breach of contract on November 17, 2003, in the Circuit Court of Itawamba County. Conseco filed a Motion for Summary Judgment on February 15, 2006. The trial court granted the motion for summary judgment by order filed August 8, 2006. Subsequently, Pate filed this appeal.

**ANALYSIS**

¶3.     Pate asserts that the trial court erred in granting Conseco's motion for summary judgment. This Court employs a de novo standard of review in considering a trial court's decision on a motion for summary judgment. *See **Huff-Cook, Inc. v. Dale***, 913 So. 2d 988 (Miss. 2005). *See also **Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206 (Miss. 2001). "A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." ***Id.***

---

[1]The annual report for November 19, 2000, through November 18, 2001, shows that the planned premium increased to $340 per month.

at 1209. *See* Rule 56(c), Mississippi Rules of Civil Procedure (M.R.C.P.). "To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the rule." **Hartford**, 826 So. 2d at 1209.

*Ambiguity*

¶4.     Pate asserts that the terms of the contract are clear regarding the amount and payment of the premium. However, Conseco relies on language in the cash-value clause in support of its decision to raise the premium. If one accepts Conseco's argument, then the cash-value clause creates an ambiguity when read with the other clauses. Nevertheless, any ambiguous terms would have to be construed against Conseco. This Court has said that "where a contract is clear and unambiguous, its meaning and effect are matters of law." **U.S. Fidelity & Guar. Co. v. Omnibank**, 812 So. 2d 196, 198 (Miss. 2002). This Court has further said:

> It is also bedrock law "that ambiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company." **Omnibank**, 812 So. 2d at 198; **Caldwell v. Hartford Acc. & Indem. Co.**, 248 Miss. 767, 776, 160 So. 2d 209, 212-13 (1964) ("The rule that the insurance policy prepared by the insurer must be construed more strongly against the insurance company, and that any fair doubt should be resolved in favor of the insured, is so well-settled in the law of insurance that we hesitate to cite any cases"). We must refrain from altering or changing a policy where the terms are unambiguous, even if there is a resulting hardship on the insured party. **Titan Indem. Co. v. Estes**, 825 So. 2d 651, 656 (Miss. 2002); **State Farm Mut. Auto. Ins. Co. v. Scitzs**, 394 So. 2d 1371, 1373 (Miss. 1981). Like any other contract, if an insurance contract is plain and unambiguous, it should be construed as written. **Estes**, 825 So. 2d at 656; **Scitzs**, 394 So. 2d at 1372; *see generally* Jeffrey Jackson, *Mississippi Insurance Law & Practice* § 1:7 (2001).

**Farmland Mut. Ins. Co. v. Scruggs**, 886 So. 2d 714, 717 (Miss. 2004).

3

¶5.     The record indicates that Pate's contract provided for a planned monthly premium of

$186.22.  Further, the contract provided the following:

> 1. PREMIUMS are amounts of money you pay us to keep this policy in force. Your premium payments are flexible.  This means that you can choose the timing and amount of your Premium payments, subject to the restrictions in this section.
> 2. Your choice regarding timing and amounts of Premiums will affect the Cash Values of the policy.  In the event you stop paying Premiums, the timing and amount of Premiums you have already paid will affect the length of time the policy will stay in force and, in certain cases, the amount of the death benefit. The mechanics governing this and an explanation of the Cash Value are found in the section entitled "V CASH VALUE AND THE CASH VALUE BENEFITS."
> . . .
> 4. PLANNED PREMIUMS are those you intend to make at regular intervals. Planned Premiums may be paid as long as this policy is in force before the Insured's death.  You chose an amount and frequency for your Planned Premiums.  Your choice is shown on the Schedule Page.
> 5. You may request us to change the amount and frequency of your Planned Premiums.  We have limits on the size of change in Planned Premiums which we will approve.  If you want to change the Planned Premiums, send a written request to us at our home office.  Tell us your name, the policy number, the new amount for the Planned Premiums, and the frequency with which you plan to make these Premium payments.  Your request must be signed.
> . . .
> 7. UNSCHEDULED PREMIUMS are premiums you pay us after issue which are not Planned Premiums.  We have limits on the maximum frequency and maximum amount of Unscheduled Premiums which we will accept.  Within these limits, you may pay Unscheduled Premiums at any time this policy is in force before the Insured's death.

¶6.     Conseco points to language contained in the section entitled "What happens if the

Cash Value becomes very small," which says:

> If the policy's Cash Value, minus the value of any Policy Loan Balance less unearned loan interest, on any Monthly Anniversary, is not enough to cover the Month's Deduction for the next Policy Month, the policy will enter its GRACE PERIOD.  The Grace Period is the next **two (2) Policy Months** after

4

this Monthly Anniversary. If you do not pay enough Premium during the Grace Period to cover any amounts in arrears, then this policy will automatically terminate at the end of the Grace Period. It will then have no cash value.

Conseco fails to point to any language contained in the policy which would allow for an increase in the planned monthly premium. Therefore, we find that the terms of the contract plainly and unambiguously support Pate and should be construed as written.

*Statute of Limitations*

¶7. Pate asserts that the trial court erred in holding that the statute of limitations barred all of Pate's claims against Conseco. Specifically, Pate argues that he was expressly told, as an inducement to purchase the policy, that his monthly premium would be $186.22 and would never increase. Therefore, Pate asserts, a claim resulting from an increase in premiums would not ripen until he was put on notice of the increase.

¶8. Mississippi Code Annotated Section 15-1-49 provides for a three-year statute of limitations after the cause of action accrues. The trial court found that Pate's action was barred by the statute of limitations pursuant to **Stephens v. Equitable Life Assur. Soc'y of the United States,** 850 So. 2d 78 (Miss. 2003). Pate asserts that the trial court misapplied **Stephens**. We agree.

¶9. **Stephens** involved an action for fraudulent concealment and misrepresentation. The cause of action accrued in 1972, but the plaintiffs did not file suit until 2001. This Court said that, in such a case, "plaintiffs have a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was preformed on their part to discover it." **Id.** at 84. This Court found: "The

5

policies were unambiguous and clearly stated the terms of payment. There was no affirmative act to prevent discovery, the terms were written into the policy." ***Id.***

¶10. In the instant case, the policy does not unambiguously and/or clearly state any terms for an increase in the monthly planned premium and, as a result, ***Stephens*** is clearly distinguishable. Furthermore, Pate's cause of action accrued when his premium was increased in 2001. Pate filed his action in 2003, which was within the three-year statute of limitations provided by Mississippi Code Annotated Section 15-1-49. Therefore, the trial court erred in finding no genuine issue of material fact and in finding that Conseco is entitled to a judgment as a matter of law. Accordingly, we reverse the order granting summary judgment and remand this matter to the trial court for proceedings consistent with this opinion.

¶11. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**