IRVING, J.,
for the Court.
¶ 1. This appeal arises from the Hinds County Circuit Court’s grant of summary judgment on behalf of Eugene C. Tullos (Tullos) and John R. Tullos, individually and doing business as Tullos and Tullos; Crymes G. Pittman; Billy Means; and John Does 1-10 (the defendants) in a lawsuit filed by Billy M. Sullivan, Teresa S. Rankin, Billy H. Sullivan, Alice M. Lowther, James H. Lowther, Jr., Julian B. Lowther, Paul E. Lowther, and Sherri L. Lacy (the heirs). Aggrieved by the court’s decision, the heirs appeal and assert that the court erred in converting a Rule 12(b)(6)[1] motion to dismiss into a motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure, that the court erred in finding that the statute of limitations had run against the heirs, and that the court erred in granting summary judgment on behalf of the defendants.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. Jeff Wooley, a widower with no children, died intestate on March 9, 1998.[2] At the time of his death, Wooley owned approximately 423 acres of land in Smith County. The appellants in this appeal are Wooley’s heirs at law. Annie Boone, Woo-ley’s sister, was appointed administratrix of the estate. Tullos acted as Boone’s attorney. At one time, some of the other heirs had hired a different attorney to represent them, but it appears that that attorney had been dismissed at the time of the event that gave rise to this appeal.
¶ 4. On August 21, 2000, a judgment approving the final accounting, closing the estate, and discharging the administratrix was entered.[3] The heirs allege that on the same day, Tullos told them that bids had been “invited and accepted on [the] 420 acres of land and that the Defendant, Crymes G. Pittman, had made the highest and best bid of $750.00 per acre.”[4] In reality, there is no evidence that any bids were taken on the property. The heirs executed a warranty deed, prepared by Tullos, to Pittman. Each of the heirs received a check drawn on Tullos’s “regular account” for their portion of the 420 acres. The memo line of each check indicates that it was for the sale of estate land to Crymes G. Pittman.
¶ 5. On April 10, 2002, Pittman deeded the 420 acres to Tullos. Accordingly, the *3 heirs filed suit against Tullos, Pittman, and various others, contending that the 2000 sale was fraudulent and that Pittman had acted as a “straw man” for Tullos to buy the property. The suit was filed on April 8, 2005. The defendants filed a motion to dismiss under Mississippi Rule 12(b)(6). On November 3, 2006, the court held a hearing on the Rule 12(b)(6) motion. During the hearing, the heirs introduced copies of the checks that were tendered by Tullos to them as payment for the land sold to Pittman. The defendants also introduced an appraisal showing the value of the land to be $500 per acre. Thereafter, the court transformed the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. In this regard, the record reflects the following:
THE COURT: Excuse me. I don’t recall. Were these attached to the complaint?
COUNSEL FOR THE HEIRS: No, Your Honor. We have not done any discovery in this case. They have not responded to the discovery we filed and they have filed no discovery request.
THE COURT: I understand. The only reason I asked so I will be clear on the appropriate standard to apply in making my ruling. The Court, then, since it is being asked without objection to consider matters outside of the pleadings, the Court will treat this as a motion for summary judgment as opposed to a 12(b) motion under the rules. I am sorry to interrupt. Go ahead.
COUNSEL FOR THE HEIRS: That’s quite all right, Your Honor.
¶ 6. At the conclusion of the hearing, the following exchange occurred:
THE COURT: All right. I am going to take the matter under advisement. I will have a ruling issued as expeditiously as possible, hopefully, within a few days[,] but I do want to reread these cases that have been submitted and study the exhibits that have been offered today. Now as to the remaining motions, we can do it one of two ways. If the Court denies the disposi-tive motions, then the Court can proceed at that time to issue an order or orders concerning the other motions; that is, just making the decision on the submissions that have been filed or if either side desires you can argue respective positions this morning and I will also take that under advisement. So what’s the plaintiffs pleasure concerning your motion to compel?
COUNSEL FOR THE HEIRS: Your Honor, I think in light of that statement, Judge, we can just wait and proceed on our pleadings that we filed, our various motions and responses to those motions. I think, obviously, if you grant the motion that will certainly affect what will happen. But also if you deny their motion, then I assume we would enter a scheduling order and then move along on the other motions also. But I don’t see the need to argue anything unless [counsel for the defendants] do.
¶ 7. On November 7, 2006, three days after the conclusion of the hearing, counsel for the heirs sent a letter, not an affidavit, to the court advising it that the heirs had a witness, identified only as a Mr. Jennings, who would testify as follows:
[H]e was there with his money to pay more than what the property was sold for, but the way Mr. Tullos got around that was, he simply said that the time for bids had expired when actually no bids had been taken by him. Others who wanted to bid on the property were also told by Mr. Tullos they could not.
*4 On November 30, the court entered a memorandum opinion, finding that summary judgment should be granted to the defendants. An order granting summary judgment was entered on February 9, 2007. The heirs appealed accordingly.
¶ 8. Additional facts will be given in our analysis and discussion of the issues as necessary.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Conversion into Motion for Summary Judgment

¶ 9. The heirs contend that the court erred in converting the defendants’ Rule 12(b)(6) motion into a motion for summary judgment. Specifically, the heirs argue that they were denied the requisite ten-day notice that is required before a hearing on a motion for summary judgment and that the court erred in “failing to allow any discovery prior to granting the Rule 56 motions for summary judgment.”
¶ 10. The record belies the heirs’ allegations. While the court did not explicitly give the parties ten days before ruling on the motion for summary judgment, the record reveals that the heirs had ample opportunity to submit evidence to the court. At the outset, we note that it was the heirs’ actions that led to the court’s conversion of the motion into one for summary judgment, an act that should have been foreseeable by their attorney. As explained by the Mississippi Supreme Court, presenting evidence converts a Rule 12(b)(6) motion into one for summary judgment:
However, where a trial judge considers matters outside the pleadings, motion to dismiss and response, the motion ceases to be one for dismissal under Rule 12(b)(6). Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1142 (Miss.2004). Rather, it is appropriately considered as a motion for summary judgment under Rule 56. Id. In Rein, the trial court considered the plaintiffs complaint, as well as the defendant’s answer, “along with the response to the motion to dismiss and the accompanying exhibits.” Id. (emphasis added). As a result, we held that the trial court improperly labeled the motion as one for dismissal under Rule 12(b)(6). Id. Instead, the court should have labeled it as a motion for summary judgment. Id.
Gulledge v. Shaw, 880 So.2d 288, 292(¶ 7) (Miss.2004). Therefore, when a party introduces evidence outside of the pleadings in defense or support of a Rule 12(b)(6) motion, the motion is converted into one for summary judgment. In the case before us, it was the heirs who converted the motion when they chose to introduce the checks in defense of the Rule 12(b)(6) motion.
¶ 11. Furthermore, the court did not rule on the motion for summary judgment until November 30, and a final judgment was not entered until February 9, 2007, more than three months after the heirs were first given notice by the court that it was converting the Rule 12(b)(6) motion into a motion for summary judgment. During those three months, the heirs did nothing to stay the court’s ruling in order to pursue discovery, nor did they pursue any relief under Rule 56(f).[5] In fact, as *5 already noted, when the court advised the parties that it was going to treat the Rule 12(b)(6) motion as a motion for summary judgment, counsel for the hems responded that that was “quite all right” with him. Further, at the conclusion of the hearing when the court inquired about the remainder of the heirs’ pending motions, their counsel advised essentially that he was willing to abide the court’s ruling on the motion for summary judgment before proceeding any further with respect to the motions.
¶ 12. Clearly, the hems had ample opportunity to either present evidence in defense of the summary judgment motion or request additional time to produce such evidence. This contention of error is without merit.

2. Statute of Limitations

¶ 13. The hems contend that the court erred in finding that the statute of limitations had run against them. Having reviewed the record, we agree.
¶ 14. The heirs signed the property in question over to Pittman on August 21, 2000. Pittman deeded the property to Tullos on April 10, 2002. The heirs filed suit on April 8, 2005. Neither party disputes that a three-year statute of limitations applies to the heirs’ claims. The heirs contend that the statute of limitations began to run on April 10, 2002, while the defendants claim that the statute began to run on August 21, 2000.
¶ 15. According to the heirs, Tul-los engaged in an act of fraudulent concealment when he indicated in the memo line of the checks given to them that the land was being sold to Pittman. It is fundamental that “fraudulent concealment of a cause of action tolls its statute of limitations.” Robinson v. Cobb, 763 So.2d 883, 887(¶ 18) (Miss.2000) (quoting Myers v. Guardian Life Ins. Co. of Am., 5 F.Supp.2d 423, 431 (N.D.Miss.1998)). In order to prove fraudulent concealment, a party must show “some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.” Id. at 887(¶ 19) (quoting Reich v. Jesco, Inc., 526 So.2d 550, 552 (Miss.1988)).
¶ 16. If the facts are as they allege them to be, such would be sufficient to toll the statute of limitations until the heirs could reasonably be expected to discover the fraud. The deed to Pittman was not filed until April 10, 2002. Therefore, the heirs could not have discovered the alleged fraud until then. Thus, we agree with the heirs that the statute of limitations began to run on April 10, 2002, and that their April 8, 2005, complaint was timely filed. Based on the facts presented in the heirs’ complaint, they had no reason to suspect any wrongdoing until they discovered the April 2002 deed to Tullos.

3. Summary Judgment

¶ 17. We review a court’s grant of summary judgment de novo. Pate v. Conseco Life Ins. Co., 971 So.2d 593, 594-95(¶3) (Miss.2008). Such a motion “should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.” Id. at 595(¶ 3) (quoting Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1209(¶ 6) (Miss.2001)); see M.R.C.P. 56(c).
¶ 18. We find that the court properly granted summary judgment on behalf of the defendants, as the heirs have failed to show any evidence of collusion or conspiracy between Tullos and Pittman. The heirs have completely failed to present a genuine issue of material fact regarding their claims. The most they have presented is that the property was sold and then was later transferred to Tullos. The heirs have presented no evidence that Tullos *6 provided the money for the purchase of the property from the heirs, or that Pittman purchased the property and was then reimbursed by Tullos. Indeed, the transfer from Pittman to Tullos did not take place until a year and a half after the sale. If Pittman had been acting as a straw man, it is unclear why he did not transfer the property sooner. Even if there was something improper about Pittman purchasing the property on Tullos’s behalf, the heirs have utterly failed to show that such is the case. At most, the heirs have showed that Pittman purchased the property in 2000 and then gave the property to Tullos in 2002 for unknown reasons.
¶ 19. Additionally, the heirs have failed to show that they have suffered any harm as a result of the alleged impropriety. The land was appraised as worth five hundred dollars an acre, a figure that the heirs have yet to rebut. Although the hems question the accuracy of the appraisal, they have offered nothing else indicating the value of the property. In August 2000, the heirs sold the property for $710 an acre — $210 more per acre than the appraisal indicated. The heirs have presented no affidavits or other evidence to indicate that there were buyers willing to pay more than $710 an acre, or that any action by Tullos improperly prevented others from bidding on the property.
¶ 20. The heirs argue strenuously that there is a genuine issue of material fact due to Tullos’s owing them a fiduciary duty. We need not discuss this allegation, but even if we were to accept that Tullos owed the heirs a fiduciary duty (and we do not), the heirs have presented no evidence that Tullos acted contrary to that duty. First, there is nothing in the complaint to suggest that Tullos owed the heirs a fiduciary duty. Tullos represented the admin-istratrix in the estate matter. The estate was already closed when the land transaction took place. There is no allegation in the complaint that, as a part of his representation of the administratrix, Tullos was either asked to sell or agreed to sell the real property in question. Since title to real property passes directly to heirs, outside of an estate proceeding,[6] any obligation on Tullos’s part to sell the 420 acres would necessarily have to emanate from an employment agreement with the heirs. The complaint does not allege that such agreement was in place. We also briefly note that the heirs place much emphasis on the fact that Tullos allegedly told them that Pittman offered the highest bid when in fact no bids had been received. We fail to see the significance or materiality of this allegation because the complaint does not allege anything about the terms and conditions that Tullos was obligated to follow in selling the land, assuming that he obligated himself to sell the land outside of the estate proceedings.
¶ 21. Since the heirs failed to produce a genuine issue of material fact, we find that summary judgment was properly entered on behalf of the defendants, although we disagree with the trial judge’s finding that the statute of limitations precluded recovery. An appellate court is authorized to affirm if it finds that the trial court reached the right result, albeit, for the wrong reason. Mason v. S. Mortg. Co., 828 So.2d 735, 738(¶15) (Miss.2002) (citing Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993)). Therefore, we affirm the grant of summary judgment in favor of all defendants.
¶ 22. We find no merit in the argument advanced in the separate opinion that the trial court was procedurally barred from proceeding with summary judgment because of lack of notice to the heirs. As we *7 have noted earlier in this opinion, the heirs were given clear notice by the court that the court was treating the Rule 12(b)(6) motion as a motion for summary judgment. Further, the heirs were given ample opportunity to respond before the court ruled, even though the court did not notify the heirs of the specific date that it would rule.[7] We decline to exhort form and technicality over substance. Likewise, we find no merit in the additional argument advanced in the separate opinion that since the Tullos defendants did not answer the complaint, summary judgment was inappropriate. Even if everything alleged in the complaint were true, summary judgment was appropriate because the complaint did not state any basis upon which relief could be granted in favor of the heirs. As already noted, the complaint does not allege that the heirs hired Tullos to sell the land in question or that he was obligated, by some other means, to sell the land by public or private bidding. Further, once the motion for summary judgment was filed, the heirs could not rest on their pleadings but were obligated to respond, by affidavits or otherwise, setting “forth specific facts showing that there [was] a genuine issue for trial.” M.R.C.P. 56(e). In this case, they rested on their pleadings and did so to their peril.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., ISHEE, J., CONCUR. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, BARNES AND CARLTON, JJ. LEE, P.J., AND CHANDLER, J., NOT PARTICIPATING.

. Rule 12(b)(6) of the Mississippi Rules of Civil Procedure allows a defendant to make a motion challenging a plaintiffs "[fjailure to state a claim upon which relief can be granted.”

. The facts are taken from the complaint and/or the memorandum opinion of the trial court.

. At some point, three acres were removed from the estate; the total land sold on August 21, 2000, was 420 acres.

. Although the complaint alleges Pittman purchased the property for $750 per acre, the defendants stated during the hearing on the 12(b)(6) motion that the property sold for $710 per acre.

. Rule 56(f) provides:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

. See Turner v. Estate of Hightower, 417 So.2d 919, 922 (Miss.1982).

. Palmer v. Biloxi Regional Medical Center., 649 So.2d 179 (Miss.1994), cited by the separate opinion as authority for the contention that the trial court erred in granting summary judgment because of lack of the requisite ten-day notice, is clearly distinguishable from this case. There, the party to whom summary judgment was granted had filed neither a Rule 12(b)(6) motion nor a motion for summary judgment when the court granted summary judgment. Instead, the successful party had only filed a motion to dismiss for failure to answer discovery and an amended motion to strike some discovery. Id. at 181-82.