CARLTON, J.,
 

 for the Court.
 

 ¶ 1. This appeal arises from an order granting summary judgment in favor of appellees/defendants North American Company for Life and Health Insurance (North American) and Cliff Hancock d/b/a Hancock Insurance Agency (Hancock). The Benton County Circuit Court found that the six policy holders’/plaintiffs’/appellants’ (the Appellants) claims were barred by Mississippi’s three-year statute of limitations. Finding ambiguity in five of the policies, and error with the trial court’s grant of summary judgment as to the policies of Sarah Hicks, L.T. Hicks, William Evans, Robert Childers, and Ray Spencer, we reverse and remand. However, we affirm the trial court’s grant of summary judgment with respect to Martha Jo Hale’s policy.
 

 FACTS
 

 ¶ 2. The underlying complaint in this case was filed on behalf of six
 
 [1]
 
 Appellants who purchased universal life insurance policies from North American through Hancock, the insurance agent. The Appellants contend that Hancock sold them universal
 
 *183
 
 life insurance policies with terms that differed from the coverage Hancock verbally assured them they were buying. Universal life insurance constitutes a flexible insurance product that differs from whole life and term life.
 
 [2]
 
 Universal life provides a flexible death benefit. It also can build a cash value at a lower cost than whole life, and over time that cash value grows tax deferred in accordance with applicable interest rates. Additionally, the insured maintains the ability to borrow from the cash value or withdraw from the cash value. However, such loans or withdrawals reduce the death benefit.
 

 ¶ 3. The Appellants allege the following causes of action: fraud, intentional misrepresentation, fraudulent concealment, fraudulent inducement, civil conspiracy, breach of obligations of good faith and fair dealing, negligent misrepresentation, breach of fiduciary and quasi-fiduciary obligations, negligence and/or gross negligence, and tortious breach of contract.
 

 ¶ 4. All of the Appellants, with the exception of Hale, purchased their policies in late 1992 and early 1993. Hale purchased her policy in 1998.
 
 [3]
 
 The Appellants claim that Hancock told them their insurance premiums would remain the same throughout the life of the insurance policies, and that if they paid the policy premiums, the policies would remain in effect until their death. Evans contends that when he received a letter advising him that the policy premiums had increased, he realized that the policy Hancock had sold him was not the policy Hancock initially represented to him. Evans contacted Hancock to inquire about the discrepancy. When Hancock refused to provide an answer about the policy increase, Evans initiated the present suit. The Appellants filed their complaint on August 31, 2004.
 

 ¶ 5. North American and Hancock filed separate motions for summary judgment as to each of the Appellants’ claims. North American and Hancock argue that each of the Appellants’ claims are barred by the three-year statute of limitations set forth in Mississippi Code Annotated section 15-1-49 (Rev.2003). Further, they argue that the Appellants provided no evidence of any fraudulent concealment which would toll the statute of limitations, and that no fiduciary relationship existed between Hancock and the Appellants.
 

 ¶ 6. In response, the Appellants argue that they filed their complaint within the statute of limitations. They claim that they had no reason to suspect that they had been deceived until 2004, when they either received letters from North American notifying them that their premiums were increasing or received information from their attorney, Mike Greer, explaining the potential problems with their insurance policies. They promptly filed suit upon learning of these problems.
 

 ¶ 7. The circuit court granted summary judgment in favor of North American and Hancock and dismissed the Appellants’ complaint with prejudice. The Appellants now appeal, asserting that they filed their claims within the statute-of-limitations period, and that genuine issues of material fact exist with regard to their fraudulent concealment and breach of fiduciary duty claims.
 

 STANDARD OF REVIEW
 

 ¶ 8. We apply a de novo standard of review to a grant of summary judgment by
 
 *184
 
 the trial court.
 
 Hudson v. Courtesy Motors, Inc.,
 
 794 So.2d 999, 1002(¶7) (Miss.2001). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “The evidence must be viewed in the light most favorable to the party against whom the motion has been made.”
 
 Northern Elec. Co. v. Phillips,
 
 660 So.2d 1278, 1281 (Miss.1995).
 

 ¶ 9. “The burden of demonstrating that no genuine issue of fact exists is on the moving party.”
 
 Lewallen v. Slawson,
 
 822 So.2d 236, 238(¶ 6) (Miss.2002) (citation omitted). “The presence of fact issues in the record does not per se entitle a party to avoid summary judgment.”
 
 Id.
 
 “The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.”
 
 Id.
 
 (citation omitted).
 

 DISCUSSION
 

 I. Whether the claims are barred by the three-year statute of limitations.
 

 ¶ 10. Mississippi Code Annotated section 15-1-49(1) provides for a three-year statute of limitations for all actions for which no other period of limitation has been prescribed. This limitations period begins within three years after the cause of action accrued.
 
 Id.
 
 However, the statute provides an exception to the three-year limitation period for certain situations. Section 15-1-49(2) states that: “In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.”
 

 ¶ 11. In
 
 Donald v. Amoco Production Co.,
 
 735 So.2d 161, 167(¶16) (Miss.1999), the supreme court clarified that under section 15-1^9(2), “the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute.”
 

 ¶ 12. We find
 
 Weathers v. Metropolitan Life Insurance Co.,
 
 14 So.3d 688 (Miss.2009) controlling in our analysis of evaluating the issues raised herein.
 
 Weathers
 
 also provides guidance in the application of the section 15-1-49(2) discovery-of-injury rule. In
 
 Weathers,
 
 Daniel Ray Weathers, a policy holder, sued his life insurer, Met-Life, to recover for fraud, breach of contract, and negligent supervision arising out of the sale of a policy with a vanishing-premium obligation.
 
 Id.
 
 at 690(¶ 7). Met-Life filed a motion for summary judgment, arguing that Weathers’ claims were time-barred under section 15-1-49.
 
 Id.
 
 at (¶ 8). The supreme court noted that the critical question before it was “whether, in a summary judgment context, we can identify as a matter of law, the point at which Weathers knew or should have known or should have made an inquiry, based on the information available to him.”
 
 Id.
 
 at 692(¶ 14). The
 
 Weathers
 
 court noted that the agent’s representations were not inconsistent with the policy; thus, it found that a genuine issue of material fact existed as to whether the agent’s representation conflicted with the plain language of the policy and, accordingly, as to when Weathers should have discovered the fraud.
 
 Id.
 
 at 694(¶ 21).
 

 ¶ 13. Like
 
 Weathers,
 
 the Appellants herein argue that the statute of limitations was tolled under the discovery-of-injury rule. The Appellants bought their policies in the early and late 1990s. However,
 
 *185
 
 they assert that their cause of action accrued in 2004, when they discovered that their policies would terminate unless they increased their premium payments, contradicting Hancock’s prior alleged representations.
 
 [4]
 
 North American, however, argues that the Appellants’ causes of action accrued when Hancock sold them the policies in the 1990s. North American further asserts that the policies unambiguously differed from Hancock’s oral representations.
 

 ¶ 14. North American points to
 
 Stephens v. Equitable Life Assurance Society of the United States,
 
 850 So.2d 78, 83(¶ 16) (Miss.2003), where the supreme court held that the plain language of the policy puts an insured on notice that the agent’s verbal representations are false; thus, a fraud claim accrues on the date of the sale of the policy. The court further expressed that “insureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy.”
 
 Id.
 
 at (¶ 15).
 

 ¶ 15. However, we note that the supreme court later clarified this rule, stating that “if the plain language of the policy does not clearly contradict the agent’s representations such that the insured is put on notice, a fraud claim accrues when the insured becomes aware of the misrepresentation.”
 
 Weathers,
 
 14 So.3d at 693(¶ 19). In such situations, the discovery exception of section 15-1-49(2) applies, and the statute of limitations begins to run when the insured discovers or should have discovered the alleged misrepresentations.
 
 Id.
 

 ¶ 16. The question of whether a contract is ambiguous is a matter of law, and “the subsequent interpretation of an ambiguous contract is a finding of fact.”
 
 Phillips v. Enter. Transp. Serv. Co.,
 
 988 So.2d 418, 421(¶ 13) (Miss.Ct.App.2008). We note that uncertainty of the contractual terms can “provide the necessary condition precedent to find ambiguity.”
 
 Miss. Farm Bureau Mut. Ins. Co. v. Walters,
 
 908 So.2d 765, 769(¶ 12) (Miss.2005). When an insurance policy is ambiguous, “this Court will apply the interpretation favoring the insured, and will determine the intent of the parties to the insurance contract "with reference to what a reasonable person in the insured’s position would have understood the terms to mean.”
 
 Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.,
 
 953 So.2d 250, 253(¶ 11) (Miss.Ct.App.2006) (citing
 
 J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.,
 
 723 So.2d 550, 552(¶9) (Miss.1998)).
 

 ¶ 17. In the case at bar, the Appellants argue that North American, through ambiguous terms and policy language, purposely concealed that the policy the Appellants actually bought differed from Hancock’s oral assurances about the policy premiums and life of the policy. Mississippi law provides that a cause of action may be tolled in cases where the cause of action was concealed by a party. Mississippi Code Annotated section 15-1-67 (Rev.2003) states:
 

 If a person liable [for] any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
 

 In order to prove fraudulent concealment and to toll the statute of limitations, the
 
 *186
 
 Appellants must show that: “(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was preformed [sic] on their part to discover it.”
 
 Stephens, 850
 
 So.2d at 84(¶ 18).
 

 ¶ 18. Here, the Appellants assert that North American acted affirmatively to conceal their misrepresentations and wrongdoing, thereby tolling the limitations period under section 15-1-67. Specifically, the Appellants contend that: the policy was ambiguous; Hancock made false representations; and North American prepared and mailed confusing and ambiguous annual statements failing to state clearly when the policy would lapse if the insured only continued to pay the planned premiums. The Appellants testified that based on Hancock’s assurances, they believed that the polices remained in effect until the maturity date if they continued to pay the planned premiums calculated specifically for each of them. In support, Clint Wood, the Appellants’ expert, opined that “concealment occurred with every document showing guaranteed rates where that plaintiffs present premium would not carry the policy to the maturity date and no warning of this impending loss of coverage was stated.”
 

 ¶ 19. North American, alternatively, argues that the policies are unambiguous and contain warnings that the policy would lapse if sufficient premiums are not paid. North American further asserts that the Appellants admitted in their depositions that the policy language contradicted their alleged understanding of the policy.
 

 ¶20. To resolve these issues and to determine when the alleged cause of action accrued, we must first determine if the contractual terms are ambiguous by reviewing the plain language of each policy. All of the Appellants bought their policies from Hancock in the early and late 1990s. North American sent each of the Appellants a copy of his or her insurance policies by mail shortly after purchasing the policies from Hancock. Each of the Appellants’ policies contained the following statement:
 

 The maturity date of this policy is the policy anniversary nearest the insured’s 100th birthdate. However, it is possible that coverage will expire prior to the maturity date shown if premiums are insufficient to continue coverage to such date. It is also possible that even if coverage continues to the maturity date there may be no surrender value available if sufficient premiums are not paid.
 

 ¶ 21. Each policy informed thé Appellants that he or she had a twenty-day period to examine the policy and to return it for any reason. In addition to the policy document, each Appellant received an annual statement beginning in 1998.
 
 [5]
 
 The policy’s annual statement included a projection of policy values and contained the following statement: “ON THE PROJECTED BASIS, THIS COVERAGE LAPSES IN POLICY YEAR_”
 
 [6]
 

 ¶ 22. Despite these warnings and various lapse dates relative to either a projected basis or base premium, the Appellants insist that even after reviewing the policy, they were unable to determine when it would lapse due to the ambiguity of the
 
 *187
 
 language of the policy. They claim they were also unable to determine from the documentation that their policies differed from Hancock’s representation. The annual statement further failed to explain that the planned premium was insufficient to carry the policy to the maturity date.
 

 ¶ 28. In
 
 Weathers,
 
 the supreme court found that the agent’s representations were not inconsistent with an interpretation of the policy. Thus, the court found that a general issue of material fact existed as to whether the agent’s representations conflicted with the plain language of the policy so as to place Weathers on notice of any misrepresentations or fraud at the time the policy was issued.
 
 Weathers,
 
 14 So.3d at 694(¶ 21). The
 
 Weathers
 
 court noted that the policy at issue did not expressly address how the premiums were to be paid after the vanishing date.
 
 Id.
 
 Therefore, the
 
 Weathers
 
 court held that the policy could be construed as consistent with Weathers’s assertions that the agent orally represented that Weathers would not have to pay premiums after the vanishing date.
 

 ¶ 24. Relevant questions before the supreme court in
 
 Weathers
 
 were: (1) whether the contract was ambiguous; (2) if the policy was ambiguous, whether the policy could be construed consistently with the representations of the agent; and (3) at what point the insured was or should have been put on notice that the policy differed from the alleged false representations.
 
 Id.
 
 at 692-94 (¶¶ 16-20). Similarly, the relevant question before this Court is: when determining if the agent’s statements to the Appellants conflicted with the plain language of the policy, whether or not the terms of the policy could be read or construed as consistent with the agent’s alleged misrepresentations, or if the language of the policy is too ambiguous to provide the Appellants with notice of the misrepresentation. In conducting this evaluation, we review the plain language of the policy as a whole. In so doing, we examine whether the policy defines significant relevant terms such as “sufficient premium,” or clarifies that the planned premium would be insufficient, thereby placing the Appellants on notice of the alleged fraud. Additionally, we evaluated whether the language of the policy clearly states that the planned premium is insufficient to continue the policy to the maturity date.
 

 ¶ 25. As stated, the policy at issue is a universal life policy. The policy lists two different terms for premiums on the same page — a planned premium and subsequently a base premium. This page of the policy, setting forth the maturity date and death option, identifies the planned premium amount immediately adjacent to the maturity date. Listed first, the planned premium was calculated specifically for each insured based on the amount of coverage desired, the maturity date, and personal data. Then, lower on the page, the policy uses the term “base premium amount,” which is not defined in the policy. After first using a term for planned premium and then using the term base premium amount, a separate paragraph at the bottom of that portion of the policy warns of a policy lapse if sufficient premiums are not paid. The warning also communicates that based on the “premium” above, the policy will expire at some point before the maturity date. However, the warning does not specify whether the warning refers to the preceding policy term of the base premium amount or the preceding policy term of the planned premium amount. As stated, both premium terms were used in the policy prior to the warning of the policy lapse for non-payment of premiums. Upon review, we find that the policy contains no language defining the two terms of “base premium” and “planned premium” as being interchangea
 
 *188
 
 ble. Moreover, the 1992 and 1993 policies do not define “sufficiency of premium.” Hale’s 1998 policy, however, contains significant new definitions not found in the earlier policies.
 

 ¶ 26. We know now, after hearing oral argument and reviewing the record and the parties’ briefs, that the policy was not designed to reach the maturity date unless the insureds paid something more than both the base premium amount and the planned premium amount. We further find the annual statements contain no clear language or terms sufficient to put the Appellants on notice that the policy would lapse if the insureds failed to pay more than the planned premium. Similarly, the policy terms contain no clear language notifying the insureds of the insufficiency of the “planned premium” to keep the policy in effect until maturity date.
 

 ¶ 27. In finding the five policies issued
 
 in 1992
 
 and 1993 ambiguous, we note that the definition of maturity date in the policies fails to explain that the payment of the planned premium will not be sufficient to keep the policy in effect to the maturity date.
 
 [7]
 
 Rather, the definition simply explains that the insurance may terminate prior to the maturity date if “sufficient” premiums are not paid, without defining sufficient premium. Again, the 1992 and 1993 policies both fail to define sufficient premium. Moreover, the 1992 and 1993 policies contain no definition for base premium, and the definition of periodic premium also contains no definition or reference to sufficiency of premium or planned premium. The periodic premium terms fail to explain that the planned premium is insufficient to keep the policy effective.
 

 ¶ 28. In the 1992 and 1993 policies, Sections A and B of the premium policy provisions set forth a formula using terms for the calculations for a sufficient premium to keep the policy in force in relation to the “base premium expiry date.”
 
 [8]
 
 The pertinent policy provisions state as follows:
 

 A. Before the Base Premium Expiry Date
 

 We first check to see if the total premiums paid to date less any partial surrenders equal or exceed the cumulative Base Premiums. Cumulative Base Premiums equal the Base Premiums shown in the Policy Schedule times the number of months, plus one, since the Policy Date. If so, we do an accumulation[-]value test. If not, we do a surrender[-]value test. Failure to pass the test applied causes a lapse to occur.
 

 To pass the accumulation[-]value test, the accumulation value less any indebtedness must be sufficient to cover the next monthly deduction.
 

 The next monthly deduction is for the policy month following the date of the test. To pass the surrender[-]value test, the surrender value must be sufficient to cover the next monthly deduction.
 

 B. After the Base Premium Expiry Date
 

 A policy lapse occurs when surrender value is insufficient to cover the next monthly deduction. The Base Premium and the Base Premium Expiry Date are shown in the Policy Schedule. The Base Premium shown is the monthly Base Premium. The following terms are described in the Nonforfeiture Provisions section:
 

 (1) monthly deductions;
 

 
 *189
 
 (2) accumulation value;
 

 (3) surrender value; and
 

 (4) partial surrender.
 

 The Base Premium and the Base Premium Expiry Date are revised if the Specified Amount is increased after the Policy Date. The Base Premium Expiry Date is advanced by the number of months from the date of a lapse to the date of any reinstatement.
 

 The amount of the premium required to keep this policy in force should a lapse occur also depends on whether the Monthly Anniversary Date we test for a policy lapse is before or after the Base Premium Expiry Date.
 

 We note that the policy makes no reference in this calculation in regard to any application of or relevance between the policy terms of base premium expiry date, base premium, and the planned premium.
 

 ¶ 29. The general policy provisions also contain a merger clause, which states that only the policy, application for the policy, and any supplemental application constitute the entire contract between the parties. The policy projection statements that North American began sending to the insureds in 1998 state that “THIS PROJECTION IS NOT A CONTRACT NOR PART OF A CONTRACT,” and we hold that the projection statements should, therefore, not be considered in determining if the language of the policy is ambiguous. We note that this projection statement is relevant, however, for purposes of notice and discovery of alleged fraud. In determining whether a contract is ambiguous, courts should consider the contract as a whole, and extrinsic evidence should only be considered upon a finding that the contract is ambiguous.
 
 Henry v. Moore,
 
 9 So.3d 1146, 1152-53 (¶¶ 16-17) (Miss.Ct.App.2008).
 

 ¶ 30. The general policy also lists the events giving rise to termination. These events contain no term allowing termination for failing to pay more than the planned premium, nor is insufficient planned premiums listed as a cause for termination under these events. However, the ending of the grace period is listed as a terminating event, so our analysis entailed a review of the policy’s explanation of grace period. The policy states that “a grace period of 61 days is allowed for payment of a premium sufficient to keep this policy in force for the policy month beginning on the date of a policy lapse.” In looking back at the 1992 and 1993 policies to the definition of grace period, the policies define the grace period in reference to the base premium expiry date, but not in relation to the planned premium. As previously stated, the base premium expiry date fails to refer to the planned premium.
 

 ¶ 31. Likewise, the projection of policy values fails to rectify any ambiguity regarding the insufficiency of the planned premium. Instead, the projection sets forth policy values and references yet a new term, “cumulative guideline premium,” thus muddying the waters even further. The projection does not reference the terms utilized in the underlying policy-the base premium amount or the planned premium amount. In addition, the projection fails to explain whether the cumulative guideline premium is different or similar to the planned premium articulated in the policy.
 

 ¶ 32. To resolve the issues before us, we must apply the law to these particular facts and policies. The
 
 Weathers
 
 court found that since the terms of the policy could be read in a manner consistent with the agent’s representations, a general issue of material fact existed as to when Weathers was placed on notice that the policy terms differed from the agent’s oral
 
 *190
 
 representations.
 
 Weathers,
 
 14 So.3d at 694(¶21). The court determined that a jury could reasonably conclude that the terms of the policy created an ambiguity, depriving Weathers of knowing he had been defrauded until after the applicable statute of limitations had run.
 

 ¶ 33. The supreme court made a similar ruling in
 
 Pate v. Conseco Life Insurance Co.,
 
 971 So.2d 593 (Miss.2008). Charles Pate, who bought a life insurance policy from Conseco, claimed that when he purchased his coverage, the company promised him that his premiums would never be raised.
 
 Id.
 
 at 596(¶ 7). The court found that since the issued policy did not contradict that alleged misrepresentation, Pate’s claim for misrepresentation accrued on the date the premiums were raised, not on the day of the policy’s issuance.
 
 Id.
 
 at 596-97(¶ 10).
 

 ¶ 34. Turning to the case at bar, in contrast to the five policies issued in 1992 and 1993, Hale’s policy, purchased in 1998, contains a projection of benefit and policy values, as well as a new index that defines sufficiency of premium and annual report. Under the definition of premium sufficiency, the policy states that “[tjhere is no guarantee that the payment of the Planned Premiums will keep the policy in force until the Maturity Date.... The Projected Lapse Date shown in the Schedule is based on Planned Premiums and the guaranteed rates and charges.” This warning clearly contradicts Hancock’s assurances that her policy provided constant premiums to maturity. We find the language of Hale’s policy to be unambiguous.
 

 ¶ 35. However, we find the language of the five policies issued in 1992 and 1993 ambiguous. Therefore, after showing the policy to be ambiguous and not in conflict with the agent’s alleged representations, the Appellants must also prove that even though they acted with due diligence in attempting to discover the cause of action, they were unable to do so.
 
 Robinson v. Cobb,
 
 763 So.2d 883, 888(¶ 26) (Miss.2000). With respect to fraudulent concealment, in
 
 Robinson,
 
 the supreme court held that the question of whether fraudulent concealment occurred, and whether due diligence had been exercised in attempting to discover the cause of action, is a question of fact for the jury.
 
 Id.
 
 at 889 (¶¶ 37-38). In the present case, the Appellants assert that a letter from their counsel put them on notice of the discrepancies between their policies and Hancock’s representations. The Appellants allege that they immediately contacted Hancock and North American in 2004 once they discovered from their counsel that their policies would terminate unless premium payments increased. The Appellants then filed suit against North American and Hancock in August 2004.
 
 [9]
 

 ¶ 36. When reviewing summary judgment, we “look at the evidence in the light most favorable to ... the party against whom summary judgment was granted.”
 
 Sellars ex rel. Dill v. Walgreen Co.,
 
 971 So.2d 1278, 1279(¶ 5) (Miss.Ct.App.2008). Thus, when reviewing the terms of the policy in the light most favorable to the Appellants, except Hale, we find that a genuine issue of material fact exists as to when the cause of action accrued, specifically when a reasonable policyholder should have realized that the terms of the policy conflicted with the alleged oral rep
 
 *191
 
 resentations by Hancock. We hold that where an ambiguous policy, by its plain language does not conflict -with the agent’s misrepresentations, the fraud claim accrued when the insured became aware of the misrepresentations or reasonably should have done so.
 
 Weathers,
 
 14 So.3d at 693(¶ 19). Accordingly, we find that as to the policies owned by Sarah Hicks, L.T. Hicks, William Evans, Robert Childers, and Ray Spencer, a genuine issue of material fact exists as to when the alleged fraud was consummated. Therefore, we reverse the trial court’s grant of summary judgment as to these five claims, and this case is remanded for further proceedings consistent with this opinion.
 

 ¶ 37. However, for any unambiguous policies that clearly conflicted with the oral representations of the agent, we submit that the three-year statute of limitations began to run at the point of sale of the policies. Since we find the language of Hale’s policy unambiguous and clearly conflicts with the oral representations of the agent, we therefore affirm the trial court’s grant of summary judgment as to Hale’s claim.
 

 II. Whether a question of fact exists regarding the Appellants’ breach of fiduciary duty cause of action.
 

 ¶ 38. Lastly, the Appellants argue that the trial court erred in granting summary judgment when material issues of genuine fact existed regarding whether the Appellants possessed a fiduciary relationship with Hancock. It is well established under Mississippi law that no fiduciary duty exists “between an insurer and an insured, or between the agent of the insurer and insured, in the context of first-party [insurance] contracts.”
 
 Walden v. Am. Gen. Life,
 
 244 F.Supp.2d 689, 693 (S.D.Miss.2003);
 
 Estate of Jackson v. Miss. Life Ins. Co.,
 
 755 So.2d 15, 24(¶ 36) (Miss.Ct.App.1999) (citations omitted).
 

 ¶ 39. The Appellants argue that they all “had great confidence and imposed substantial trust in Cliff Hancock and his insurance advice.” The Appellants cite to
 
 Lowery v. Guaranty Bank and Trust Co.,
 
 592 So.2d 79, 80 (Miss.1991), in which Mrs. Lowery and the estate of Mr. Lowery sued Guaranty Bank and its agent for a breach of its fiduciary duty to notify them that an insurance policy had terminated. The agent basically acted as the Lowerys’ loan officer, had previously extended bank notes without any formal application, and had advised the family regarding financial insurance matters in the past.
 
 Id.
 
 at 85. The Mississippi Supreme Court found that the history between the Lowerys and the agent could have created a relationship where the Lowerys:
 

 placed [their] trust and confidence in Guaranty Bank to the point of being less vigilant about the coverage of the credit life insurance than they had been in the past. If that were the case, the bank owed them a duty to notify them that the credit life insurance had lapsed and that it would not be in force while they waited on Mr. Lowery to return.
 

 Id.
 

 ¶ 40. In the case at bar, the Appellants fail to allege or provide evidence that they maintained any significant professional or fiduciary relationship with Hancock outside of buying insurance policies from him. The record is void of evidence of any special circumstances which would warrant this Court to depart from the general rule that no fiduciary relationship exists between an insurer and insured. Accordingly, the trial court properly concluded that this claim by each of the Appellants was legally insufficient to withstand summary judgment.
 

 ¶ 41. THE JUDGMENT OF THE BENTON COUNTY CIRCUIT COURT
 
 *192
 
 IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-SIXTH TO APPELLANT HALE AND FIVE-SIXTHS TO THE APPELLEES.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. BARNES, J., NOT PARTICIPATING.
 

 [1]
 

 . The complaint was originally filed on behalf of ten plaintiffs. Four plaintiffs voluntarily dismissed their claims in August 2005. The remaining six appellants are Sarah Hicks, L.T. Hicks, Martha Jo Hale, William Evans, Robert Childers, and Ray Spencer. For the sake of clarity, these six appellants may be referred to collectively as "the Appellants.”
 

 [2]
 

 . Flexible insurance policies give policy holders a variety of options to choose from, including premium amounts and investment schemes.
 

 [3]
 

 . The language in Hale's policy differed from the other Appellants’ policies by defining terms such as sufficiency of premium.
 

 [4]
 

 . In 2004, the Appellants received a letter from North American informing them that their premiums would be increasing.
 

 [5]
 

 . Hancock's representations were not made part of the contract, nor were they referred to or incorporated by reference in the contracts. Thus, the discrepancy between Hancock’s statements and the contractual terms goes only to notice, and not to whether the contract was ambiguous.
 

 [6]
 

 . Each respective Appellant had a different policy year listed regarding when coverage would lapse. This lapse date was different from the expiration date in the policy relative to the “base premium."
 

 [7]
 

 . As stated above, the policies list the planned-premium amount immediately adjacent to both the maturity date and death option chosen.
 

 [8]
 

 . The policy uses the term "base premium expiry date,” but the policy fails to define this term.
 

 [9]
 

 . In 2004, after receiving letters from North American stating that his premium payments were insufficient, Evans inquired as to why his premiums were rising. Hancock responded that he did not know the answer, but would look into the matter and call Evans back with any information. When Hancock failed to call Evans back with an answer regarding the increases, Evans initiated the present lawsuit.