## F. P. Baylot, d.b.a. F. P. Baylot Company v. Habeeb, et al.

No. 42464 December 10, 1962 147 So. 2d 490

February 18, 1963 149 So. 2d 847

440

*Prewitt & Bullard,* Vicksburg, for appellant.

*Brunini, Everett, Grantham & Quin,* Vicksburg and Jackson, for appellees.

McELROY, J.

The appellant filed suit in the Circuit Court of Warren County, Mississippi, against appellees for $3,122.39 alleged to be the balance due under written contract attached to the declaration for construction work performed by the appellant and for extra work performed outside the contract. The contract was made August 11, 1960, to construct a building to be known as an addition to the Alex Habeeb Grocery.

The plans or blueprints consisted of three pages. The contract called for the construction of the building under the plans and a separate estimate for the total sum of $22,013.42. The appellant alleged in his declaration that the contract as required by the plans and specifications was completed January 1, 1961. There was an addition to the work required under the contract and the appellant performed such work in the total sum of $4,108.97, thus making a total amount of indebtedness and obligation to the plaintiff of $26,122.39. The appellees paid the appellant $23,000 on the total amount due, leaving a balance of $3,122.39. The contract stated in part: "Contractor agrees to construct a building in accordance with and as shown by plans consisting of Pages 1, 2 and 3 entitled 'Addition to the Alex Habeeb Grocery drawn by E. H. S. and J. M. C.' and to perform that certain work set forth and described in 'Estimated cost of building in accordance with the plans'." Part C of the contract says: "Contractor agrees that the Owners' representative, Mr. Ed Schaffer, will be given opportunities of inspection as the work progresses and that the decision of Mr. Schaffer as to the quality of materials and work-

manship shall be final.'' The appellees denied owing anything to the appellants.

In the trial of the case before the jury, the appellees admitted that considerable part of appellant's claim for extras amounted to $1,420.77. They admitted the bill for extra electrical work in the amount of $217.83, thus admitting that the appellant was due $1,638.59 for extra work not paid, but still denied owing $1,483.80. At the close of the appellant's testimony, the court, by directed verdict, would not allow $167.88 for extra plumbing, $123.75 for extra tile work, $648.50 for extra slab and foundation work, or a total of $940.13. Therefore, the total amount in which the jury could bring in a verdict was for $1,966.86. However, the jury verdict was for $1,966.36. At the conclusion of the case the court gave a peremptory instruction disallowing the $940.13 and, of course, this amount was not submitted to the jury.

The question before the court is whether this is an ambiguous contract and if it is such, was the judge justified in granting the peremptory instruction for the $940.13 in question?

The appellant's testimony was to the effect that he had performed the contract according to the plans and specifications; that he performed work over and above that called for in the contract, plans and specifications; that he did this extra work and kept it on a separate sheet showing the work done; that no work was done except by agreement of Mr. Touphie Habeeb and Mr. Schaffer; that everything done above the contract and specifications was at their instance and request; and that Mr. Ed Schaffer had drawn up the plans and specifications for Mr. Habeeb. Mr. Ed Schaffer gave all of the figures. They admitted the plans and specifications were wrong in that Mr. Schaffer had estimated 3,000 pounds of steel when in fact it should call for three tons of steel. He stated that the floor space was increased

because the counters were made smaller and therefore the extra charge should have been allowed as claimed by the appellant for the tile work. He stated there were certain errors in the plans in failing to take into consideration the repairing of the roof where it joined onto the house, which took extra money and which they agreed to pay, and it was included in the agreement to pay. At one point in the trial the court stated that the plans were ambiguous. It is the contention of the appellant that the plans, specifications and estimates are so deficient that several interpretations can be gathered from their meaning.

"Where defects in the plans and specifications, the sufficiency of which is not warranted by the contractor, necessitate extra work to complete the contract, the contractor may recover therefor from the owner." 9 Am. Jur. 15, Sec. 19.

In McDonnell Construction Co. v. Delta & Pine Land Co., et al., 163 Miss. 646, 141 So. 757 (1932), we find a very similar suit factually, with the exception that the contractor sought to enforce a materialmen's lien. There was a written contract but subsequently an alleged oral agreement for extra work. The owner admitted certain of the extras but denied others, endeavoring to show they were included under the written contract, and also incurred damages which offset or extinguished the contractor's claim. The Lower Court excluded evidence concerning extras, giving owners judgment, which judgment was reversed with this reasoning: "If it were true that the liability for extras accrued by virtue of an oral contract, certainly upon these items the case at issue, even though the appellant had not made the written contract an exhibit to his petition. Insofar as these items are concerned, it is clear that the written contract was involved only, according to the appellant's theory of the case, as a matter of defense to the appellee. It is not controverted that, even though parties have made

a written contract, they may thereafter enter into a parol contract in addition to or in waiver of the original contract, and such an oral contract not in violation of law may be enforced by the parties.

"In the case of M. B. Lee v. A. E. Hawks, 68 Miss. 669, 9 So. 828, 13 L. R. A. 633, this court held that, in cases within the statute of frauds, an action cannot be maintained upon a contract not in writing; but, in a controversy between parties to a written contract, an executed parol agreement to waive a particular provision in the contract may be shown. In the same case this court further held that one in possession of land under a written lease for a term of years, who has the right by the contract to cut timber, but who, for a valuable consideration, waives this right, is liable in damages for timber afterwards cut on the land, though the waiver is by parol. Judge Woods quoted with approval the following from Benjamin on Sales, p. 229: 'Parol evidence to prove, not a substituted contract, but the assent of the defendant to a substituted mode of performance of the original contract, when that performance is completed, is admissible.'

"To state the case presented to us simply, it is this, plaintiff sued the defendant for certain extra work and extra material furnished in a building contract, which he says was contracted for orally. Defendant answers, yes, we were liable for a certain part of the amount claimed, specifying the items, but we do not now owe it because we incurred certain damage which is an off-set or recoupment, or extinguishment of a part thereof, as shown by a certain written contract. The court declined on this state of facts to permit evidence as to the extras, and awarded the defendant a judgment. This was reversible error."

 █ Where there is dispute between the parties as to the meaning of "estimated costs", it can only mean that an ambiguity arose from the terms of the contract.

We believe that it is a question that should be submitted to the jury.

Such a situation was presented in New Orleans Terminal Company v. Dixie Rendering, Inc., 179 So. 98 (La. 1938), where a detailed estimate of the cost of making repairs to a railroad track was submitted for $2,070.00. When the repairs were actually made it cost $796.21 more and the court gave judgment for additional amount. Part of opinion is as follows:

"When we decided the question presented by the exception of no cause of action, we realized that there may be instances where the word 'estimate' could have been intended as a 'bid' or a definite offer as well as being used in its ordinary sense to denote an approximation of the cost for which certain work would be done. It was for this reason that we felt that, in view of the controversy between the parties, it was necessary and proper for parol evidence to be introduced in order that the true intention of the obligor and obligee might be resolved. But without the aid of parol evidence, we would have been prompted to hold that the word 'estimate' was used in the plaintiff's letter in its ordinary and usual sense. Bouv. Law. Dict., Baldwin's Library Edition, p. 365, defines the word 'estimate' to be: 'A word used to express the mind or judgment of the speaker or writer on the particular subject under consideration. It implies a computation or calculation. (People v. Clark) 37 Hun (201) 203

" 'A rough valuation; an appraisement. English. Equivalent to "assess". Both mean "to fix" the amount of the damages or the value of the thing to be ascertained. 11 A. & E. Ency. 2nd Ed., 383; (Roddy & Dahm v. McGetrick) 49 Ala. (159) 162.

" 'Estimated cost of a building held to mean the reasonable cost of a building erected in accordance with the plans and specifications referred to, and not necessarily the amount of some actual estimate made by a

builder, nor an estimate agreed upon by the parties, nor yet an estimate or bid accepted by the defendant. Id.; (Lambert v. Sanford) 55 Conn. 437, (12 A. 519).'

"In the syllabus of the case of Egleston v. Hirsch, No. 9549 of our Docket, see Louisiana and Southern Digest, which involved a question somewhat similar to the one now under review, we said:

" 'A clause in a building contract reading: "My maximum estimate of the cost of your work is six thousand dollars, including my commission, though I expect to get through with less money, possibly as little as five thousand dollars," carries no warranty as to the ultimate cost, and cannot be pleaded as such by the owner when he is sued for an unpaid balance due the builder as commissions based on ten per cent of the maximum estimate.'

"In Bautovich v. Great Southern Lumber Co., 129 La. 857, 56 So. 1026, 1027, Ann. Cas. 1913B, 848, our Supreme Court had occasion to consider the word 'estimate' as used in a contract. In defining its meaning, the court observed:

" 'The word "estimate" precludes accuracy, and its ordinary meaning is to calculate roughly or to form an opinion from imperfect data. Words and Phrases, (First Series) vol. 3, p. 2493. The word "estimate" has no more certainty than the terms "about" or "more or less".' "

In the case of Texas Co. v. Jackson, 174 Miss. 737, 165 So. 546, the Court said:

"* * * The evidence of the practical construction placed by parties on their contracts is admissible as an aid in its interpretation when the contract is ambiguous or its meaning not clear, * * *."

"Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the intent and object of the contract cannot be ascertained from the language employed, parol evidence

may be introduced to show what was in the minds of the parties at the time of making the contract. * * *'' 20 Am. Jur., Evidence, Sec. 1147. The ambiguity may arise from words which are uncertain when applied to the subject matter of the contract. Traders' Ins. Co. of Chicago v. Edwards Post 1905, 86 Miss. 135, 38 So. 779. 53 Am. Jur., Trial, Sec. 266, states: ''Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions.'' It is for the jury to determine what is the agreement of the parties, where there is uncertainty in a written contract because of ambiguity or doubtfulness. 53 Am. Jur., Sec. 267, 269; Harris v. Williams (Miss. 1949), 43 So. 2d 364; Frisby v. Grayson, 1953, 216 Miss. 753, 63 So. 2d 96. This case was specially followed in Hadad v. Booth, 225 Miss. 63, 82 So. 2d 639 (1955); and Covington Cadillac Company v. South Aire, Inc., 136 So. 2d 866.

██ █ We are of the opinion that these plans, specifications and estimates as shown in the record are deficient and certainly are ambiguous in the interpretations that we can gather from their meaning. In cases of this nature it is certainly a question for the jury, and we so hold. We hold that the issues in the amount of $1,966.36 were properly submitted to the jury and therefore the judgment will be affirmed as to that amount. We believe that the court erred in giving a directed verdict in the amount of $940.13. This amount should have been submitted to the jury. The case is affirmed in the amount of $1,966.36 and the case is reversed and remanded for a new trial as to the amount of $940.13.

Affirmed in part and reversed in part.

McGehee, C. J., and Lee, Kyle and Gillespie, JJ., concur.

## ON SUGGESTION OF ERROR

McElroy, J.

Appellee correctly contends in his suggestion of error that appellant was obligated to do all work specified or described in the plans and specifications or in "Estimated Cost of Bldg. in Accordance with Plans" for the flat sum of $22,013.42, and that variance between estimates and actual costs of the several items so specified or described could not vary the amount appellant was entitled to collect from appellees. Appellant can recover only for extra work not described or specified on the plans and specifications or the exhibit to the contract designated as "Estimated Cost of Bldg. in Accordance with Plans."

After reconsideration of the contention of appellant that he was entitled to submit to the jury whether he was entitled to $648.50 for extra steel used in constructing the concrete work, we are of the opinion that this item should have been submitted to the jury for the reason that on Exhibit 2 to the testimony of appellant there is shown in handwriting the following, "Estimated amount of steel 3,000 lbs." The proof showed that 9,500 pounds of steel was used. The testimony justifies the inference that this entry was made on Exhibit 2, which is the plans and specifications, before the contract was signed. Appellant had a right to construct the building in accordance with the plans and specifications. Other proof indicates that the jury would be justified in finding that appellees authorized the additional steel. Appellant was not entitled to submit this question to the jury merely because of variance between estimated cost in "Estimated Cost of Bldg. in Accordance with Plans" and actual cost.

As to the amount claimed by appellant for extra tile work, the proof showed that the floor plans were changed in that the counters were placed so as to require

more tile than called for in the original plans. We reverse the case on this item because appellees caused the change in plans so as to require more tile than required by the original plans.

In regard to the item of $167.88 for plumbing, appellant bases his claim on the ground that the plumbing cost more than estimated, but this is not a valid reason for submitting that item to the jury. As already noted, the contract was for a flat sum and before appellant can collect any sum over the $22,013.42 contract price, he must show that he did work not specified or described in the plans and specifications or the estimate exhibit. We are unable to find any statement by appellant of any specific item that could be designated as extra plumbing work. We are of the opinion that our original opinion in this regard was erroneous, and that part of the original opinion is withdrawn and the lower court is affirmed as to the plumbing item.

Suggestion of Error sustained in part as herein indicated, and overruled in part.

*McGehee, C. J., and Lee, Kyle and Gillespie, JJ.,* concur.