# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 14, 2011

No. 10-60015

Lyle W. Cayce
Clerk

DORIS EVERITT, Executrix of The Estate of Robert M. Everitt, Sr., Deceased; GORDON K. ABBOTT; SAMUEL F. ABEL; LUCAS CLARENCE ABEL; KENNETH ADAIR; ET AL,

Plaintiffs - Appellants,

v.

PNEUMO ABEX, L.L.C., Successor by merger to Pneumo Abex Corporation,

Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:06-CV-231

Before DeMOSS, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants, a group of approximately 1300 to 1400 plaintiffs (the Everitt Parties) filed a lawsuit in district court to enforce a settlement agreement arising out of asbestos litigation against Defendant-Appellee Pneumo Abex, L.L.C. (Pneumo) and certain other asbestos manufacturers, who are not parties to this case. The district court granted summary judgment to Pneumo.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 10-60015

The Everitt Parties appealed, and we now REVERSE and REMAND.

I.

Pneumo is a holding company that includes, among other things, the Abex brake business, which began manufacturing products that contain asbestos in the 1920s. Pursuant to a series of corporate transactions transferring control of Pneumo and its predecessors, the details of which are not relevant to this case, Pneumo was by 2001 the beneficiary of an indemnity from its parent company, Federal-Mogul Corporation (Federal-Mogul), for all asbestos-related claims arising from or relating to the products, assets or past conduct and operations of the Abex brake business brought against Pneumo after August 29, 1998.

In February 2000, the Everitt Parties filed a lawsuit in the Circuit Court of Jefferson County, Mississippi against Pneumo and certain other asbestos manufacturers, distributors, or sellers affiliated with Federal-Mogul seeking recovery for injuries alleged to have resulted from their exposure to asbestos. *Hilary A. Anderson v. The Flintkote Company,* No. 2000-22 (Miss Cir. Ct. Feb. 8, 2000). In September 2001, the Everitt Parties settled their claims against Pneumo and three of the other co-defendants in that case by letter agreement.[2]

The letter agreement entitles individual plaintiffs to payment for their submitted claims at specified rates based on their particular asbestos-related disease. It also obligates Pneumo and its co-defendants to make six quarterly payments into a settlement fund to satisfy those claims beginning on November 1, 2001 and continuing quarterly until February 1, 2003. The agreement states that any remaining sums to be paid to plaintiffs are to be determined on May 1, 2003, although it provides no express deadline for claims to be submitted or paid. Individual plaintiffs may effectively opt-out of the agreement by electing

---

[2] The letter agreement memorializing the settlement is dated July 6, 2001, but the undisputed record shows that the settlement was executed in September, 2001.

2

No. 10-60015

"not to accept" the settlement. The agreement states that the dismissal with prejudice with respect to "any such plaintiff not accepting this settlement shall be vacated."

Under the letter agreement, individual plaintiffs are required to provide certain documentation prior to receiving payment, including a release of liability, a certification of a medical doctor evidencing an asbestos-related disease, and, where appropriate, documentation relating to estate papers and death certificates. The agreement is silent as to the consequences of a bankruptcy or other reorganization of Pneumo or of Pneumo's parent companies, but provides each party a termination right "if federal or Mississippi state tort reform legislation or judicial decision were to be enacted so as to cause either party" to conclude that its continued participation in the settlement agreement would no longer be in its best interests.

On October 1, 2001, before any payments into the settlement trust had come due (and before any such payments had in fact been made), Federal-Mogul and certain of its affiliates - including all of the *Anderson* defendants except Pneumo - filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. Pneumo sought to intervene in the bankruptcy proceeding as a non-debtor third party, seeking the extension of the Federal-Mogul bankruptcy automatic stay to Pneumo and also a channeling injunction protecting Pneumo's assets under Section 524(g) of the bankruptcy code. It is undisputed that the Everitt Parties did not oppose that filing. Federal-Mogul subsequently informed Pneumo that it could no longer satisfy its indemnity obligations. Nor did they oppose Pneumo's further declaratory judgment complaint in the bankruptcy court in December 2005, as became clear at oral argument.

At some later time (although the record does not show precisely when),

3

Pneumo withdrew its request for an automatic stay from the bankruptcy court. Pneumo's other requests for injunctive relief were denied by the bankruptcy court nearly five years later, on January 20, 2006. Once it became clear that no injunctive relief would issue from the bankruptcy court in Pneumo's favor, fifty-seven of the individual Everitt plaintiffs submitted claims for payment as provided in the letter agreement. Pneumo rejected those claims as untimely on March 28, 2006.

Despite the fact that Pneumo's request for injunctive relief was rejected by the bankruptcy court, the claims against Pneumo were taken into account in the various plans of reorganization proposed for the Federal-Mogul debtors. In support of those plans of reorganization, Pneumo submitted a sworn declaration to the bankruptcy court in June 2007 by its president, Steven L. Fasman. Fasman's declaration explained that although the claims of the Everitt Parties were settled before Federal-Mogul's bankruptcy, "the Debtors stopped processing the settlement and made no further settlement payments" after the date of the bankruptcy. As a result, Fasman explained, those "settled but not paid" claimants filed suit against Pneumo. On November 8, 2007, the bankruptcy court approved one of the alternative proposals for reorganization. The so-called "Plan B" scheme the court approved awarded Pneumo $140 million in full satisfaction of the then-present and future asbestos claims for which Federal-Mogul owed indemnity to Pneumo, but was unable to pay due to the bankruptcy.

The Everitt Parties filed their amended complaint in this action on August 15, 2008, seeking enforcement of the settlement agreement. After conducting discovery, the Everitt Parties and Pneumo filed simultaneous motions for summary judgment. The district court denied the Everitt Parties' motion, granted Pneumo's motion, and dismissed the Everitt Parties' complaint

No. 10-60015

with prejudice. Although the district court concluded that the letter agreement was a valid contract (rather than, as Pneumo had claimed, merely an offer that the individual Everitt plaintiffs never accepted), it held that the Everitt Parties' claims under the letter agreement were time barred in part because they filed this lawsuit more than three years after Pneumo first failed to make payments into the settlement fund on November 1, 2001. The trial court also rejected the Everitt Parties' substantive contractual claims, holding that the Everitt Parties' breached the letter agreement by failing to present their claims prior to what the court characterized as the "implicit" May 1, 2003 deadline. Moreover, the district court rejected the Everitt Parties' contentions that the Federal-Mogul bankruptcy temporarily suspended performance under the agreement, that the bankruptcy stay automatically extended to Pneumo, and that Pneumo was equitably estopped from asserting the statute of limitations. The Everitt Parties timely appealed.

## II.

This court reviews the district court's summary judgment *de novo*, applying the same legal standards used by the district court. *Sanders-Burn v. City of Plan*, 594 F.3d 366 (5th Cir. 2010). Summary judgment is proper if the movant shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that Mississippi law applies to this diversity case.

Both of Pneumo's chief arguments in this case, which the district court accepted, depend on the idea that the September 2001 settlement agreement was breached. With respect to the statute of limitations, the Everitt Parties' claims can only be barred if in fact their claims matured when Pneumo failed to make its installment payments as scheduled. The court's substantive holding is equally contingent on a breach, namely, the Everitt Parties' failure to present

their claims by May 1, 2003. In response to Pneumo's argument, the Everitt Plaintiffs dispute that May 1, 2003 constituted a claims deadline, and argue that in any event, the automatic stay arising from the Federal-Mogul bankruptcy applied to Pneumo, and tolled the time to submit any claims under the letter agreement and under the Mississippi statute of limitations.

We need take no position on those questions to resolve the issues here. Rather, our judgment turns on the parties' behavior. It is a general rule of contract interpretation under Mississippi law that "[w]here a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, . . . the question of interpretation should be submitted to the jury." *Baylot v. Habeeb*, 147 So. 2d 490, 494 (Miss. 1962).

The settlement agreement here made no provision for the bankruptcy of Federal-Mogul. Faced with that ambiguity, the record on this appeal shows that both parties consistently acted as if the bankruptcy delayed implementation of their settlement. Most important, immediately after Federal-Mogul filed its Chapter 11 petition, Pneumo sought a declaratory judgment with the Everitt Parties' cooperation seeking the extension of the Federal-Mogul automatic stay to claims against itself. The Everitt Parties acquiesced again when Pneumo filed a further complaint for declaratory judgment in December 2005. When questioned directly at oral argument, Pneumo's counsel never denied the fact of that cooperation, and was unable to pinpoint any date in this record before the bankruptcy court's January 2006 determination that the parties' cooperative paths diverged. On this record, no reasonable actor in either Pneumo's or the Everitt Parties' positions would believe the settlement agreement was operative. Indeed, had the Everitt Parties then filed their claims against Pneumo, they would have been in the anomalous position of potentially violating the very automatic stay to which

they had acquiesced.   Moreover, proceeding against Pneumo during the pendency of Pneumo's application for an automatic stay would have disrupted the complex and ongoing bankruptcy negotiations seeking to secure a global settlement of Pneumo's asbestos liability indemnity claims against Federal-Mogul and its predecessors in interest.   Such action, by putting into jeopardy Pneumo's rights to recover indemnity funds from Federal-Mogul, would also have been unreasonable in the circumstances.

The parties' course of conduct following Pneumo's initial filing in the bankruptcy court was equally consistent with an intent to delay implementation of the settlement agreement until the resolution of the Federal-Mogul reorganization.   When the November 1, 2001 deadline for the first installment payment into the settlement fund arrived, Pneumo chose not to pay.   The Everitt Parties made no protest, as one would expect from a hostile party expecting payment.   Nor did the individual plaintiffs exercise their contractual right to opt-out of the settlement.   Rather, they waited to see the outcome of the bankruptcy stay proceedings, and made their claims expeditiously a few months after the bankruptcy court denied relief in January 2006.   In turn, Pneumo raised no objections to the individual Everitt plaintiffs' failure to present their claims until March 28, 2006, almost three years after the purported May 1, 2003 deadline.   To the contrary, as late as 2007 and well after Pneumo says the Everitt claims expired, the Fasman declaration characterized the Everitt claims as "settled but not paid," ascribing their delayed processing to the Federal-Mogul bankruptcy. Pneumo's suggestion that this concession should be discounted because it does not "reflect that [Fasman] even read the settlement agreement upon which the claims are based" strains credibility.   As Fasman himself swore in the same declaration, one of his primary responsibilities for the past twelve years had been supervising the

defense of approximately 240,000 asbestos claims against Pneumo.  As a result, he had  "become very familiar with the corporate and litigation history" of Pneumo and its asbestos-related liabilities.

That there is ambiguity in the interpretation of the settlement agreement does not mean that the Everitt Parties will ultimately prevail.  It may be, upon further proceedings in the district court, that Pneumo can adduce evidence showing that no understanding between the parties delayed implementation of the settlement agreement, or that the parties negotiated a different resolution to the problem of the Federal-Mogul bankruptcy. Pneumo may also have access to various other defenses to the Everitt Parties' contractual claims.  On the current record, however, this court cannot find that the settlement agreement is clear enough to justify the forfeiture of the individual Everitt plaintiffs' claims. *See Monsanto Co. v. Cochran*, 180 So.2d 624, 630 (Miss. 1965) ("equity abhors a forfeiture and is disposed to seize on slight circumstances to avoid a forfeiture").

### III.

For the foregoing reasons, the judgment is REVERSED and REMANDED.