ISHEE, J.,
for the Court:
¶ 1. In 1993, Stephen and Gloria Reffalt were granted an irreconcilable-differences divorce, ending nearly four decades of marriage. Their property-settlement agreement provided that Stephen would pay approximately $1,600 per month in alimony, an amount stated to be one-half of his monthly retirement income. In December 2008, Stephen filed a petition to modify the alimony payments. According to Stephen, his retirement income had been reduced since the divorce. Stephen contended that the property-settlement agreement required monthly alimony be reduced proportionally — to about $1,150 per month. The chancellor found the property-settlement agreement ambiguous, but he concluded that Stephen’s course of performance — having paid $1,600 per month for almost fifteen years — evidenced the parties’ mutual understanding that the higher amount was owed. Stephen appeals, contending that the chancellor erroneously modified the property-settlement agreement. Finding no error, we affirm.
DISCUSSION
¶ 2. The provision of the property-settlement agreement at issue reads:
The parties both agree and understand that [Stephen] will retire from Martin Marietta Manned Space Systems effective April 24, 1992.... The parties have agreed to accept # D-Level Income as the monthly benefit option. This will provide [Stephen] a monthly income of approximately $S[,]189.26. [He] will remit to [Gloria] one-half of this income, being the approximate amount of $1,594.63, on the first day of each month ... commencing on January 1, 1993. These monies will be considered alimony[,] and [Gloria will be responsible for the income taxes].
¶ 3. Martin Marietta’s “Level Income” benefit option was an early-retirement plan. As the name suggests, it would provide Stephen with a “level” income of approximately $3,200 per month after he retired. Initially, this income would be derived entirely from the Martin Marietta retirement plan, but when Stephen turned sixty-two (about two years after the execution of the agreement) and became eligible to receive social security benefits, the private plan would pay proportionately less. Between the private plan and the social security benefits, Stephen’s retirement income would remain the same at about $3,200 per month, hence the name “level income.” The Martin Marietta retirement plan would pay about $2,300 per month after Stephen began receiving social security benefits.
¶ 4. The chancellor ordered Stephen to continue paying approximately $1,600 per month. Stephen characterizes this as a modification of the property-settlement agreement to award Gloria a share of his social security benefits when she was only entitled to one-half of his private retirement. Gloria contends that the property-settlement agreement instead entitles her to alimony in the amount of one-half of Steven’s total retirement income, which includes both social security and the private retirement plan. This case presents a question of contract interpretation.
¶ 5. “Property[-]settlement agreements are contractual obligations.” West v. West, 891 So.2d 203, 210 (¶ 13) (Miss.2004) (citation omitted). “The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law.” *1224 Ivison v. Ivison, 762 So.2d 329, 335 (¶ 16) (Miss.2000). The court “is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended.” Id. at (¶ 17). The meaning of a contract is determined using an objective standard, not a party’s subjective intent or belief. Palmere v. Curtis, 789 So.2d 126, 131 (¶ 10) (Miss.Ct.App.2001) (citation omitted). The Mississippi Supreme Court has established the following process for contract interpretation by the courts:
We have delineated a three-tiered process for contract interpretation. First, we look to the “four corners” of the agreement and review the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, we must effectuate the parties’ intent. However, if the language of the contract is not so clear, we will, if possible, “harmonize the provisions in accord with the parties’ apparent intent.” Next, if the parties’ intent remains uncertain, we may discre-tionarily employ canons of contract construction. Finally, we may also consider parol or extrinsic evidence if necessary.
West, 891 So.2d at 210-11 (¶ 14) (internal citations omitted).
¶ 6. The chancellor found the property-settlement agreement ambiguous, ultimately concluding that the parties’ course of performance evidenced a mutual understanding that Gloria was owed the higher amount.
¶ 7. In reviewing a chancery court’s judgment, this Court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.” Hamilton v. Hopkins, 834 So.2d 695, 699 (¶ 12) (Miss.2003). A chancellor’s interpretation and application of the law, however, is reviewed de novo. Bond v. Bond, 69 So.3d 771, 772 (¶ 3) (Miss.Ct.App.2011).
¶ 8. The initial question of whether ambiguity exists within an instrument is one of law. McDonald v. Miss. Power Co., 732 So.2d 893, 898 (¶ 14) (Miss.1999). “Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure, and its construction depends upon other and extrinsic facts in connection with what is written [it presents a question of fact for the chancellor].” Baylot v. Habeeb, 245 Miss. 439, 447, 147 So.2d 490, 494 (1962) (citation omitted). On appeal, our review of these factual findings is limited to the familiar substantial evidence/manifest error standard. Lamb Constr. Co. v. Town of Renova, 573 So.2d 1378, 1383 (Miss.1990).
¶ 9. The threshold issue in our analysis is whether the property-settlement agreement is ambiguous, which is a question of law that we address de novo. Again, the provision at issue reads:
The parties have agreed to accept # D-Level Income as the monthly benefit option. This will provide [Stephen] a monthly income of approximately $3[,]189.26. [He] will remit to [Gloria] one-half of this income, being the approximate amount of $1,594.63, on the first day of each month ... commencing on January 1, 1993. These monies will be considered alimonyU and [Gloria will be responsible for the income taxes].
The agreement does not explicitly provide provide for a reduction in the amount of alimony owed when the Martin Marietta retirement plan begins paying less. Ordinarily, periodic alimony payments may only be modified by court order on a showing of a material change in circumstances. Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss.1993). In this case, however, *1225 we are dealing a property-settlement agreement—a contract between the parties. The Mississippi Supreme Court has permitted property-settlement agreements to provide for automatic modification of alimony based on changes in the parties’ incomes. See Speed v. Speed, 757 So.2d 221, 225-26 (¶¶ 11-16) (Miss.2000). The agreement states that Stephen will “remit to Gloria one-half of [his monthly retirement income],” which it states is “approximately” $1,594.68. This language suggests that the alimony award is subject to automatic modification. We agree with the chancellor that the amount of the award is ambiguous.[1]
¶ 10. As the property-settlement agreement is ambiguous, the chancellor properly considered parol and other evidence. Rotenberry v. Hooker, 864 So.2d 266, 270 (Miss.2003). Gloria testified that they had understood Stephen would pay a fixed amount of roughly $1,600 per month, indefinitely; Stephen disagreed. The best evidence of the parties’ understanding was their course of conduct: Stephen had paid Gloria the $1,600 per month since they divorced seventeen years before, including approximately fifteen years after he began receiving less than $3,200 per month from the private retirement plan. Stephen contended that he had objected to paying the greater amount, but he relented because he felt he owed Gloria money on another debt. The chancellor found that Stephen’s explanation was not convincing because Gloria had forgiven the other debt. “[G]reat weight should be given to practical construction which the parties have placed upon the instrument.” Warren v. Derivaux, 996 So.2d 729, 735 (¶ 14) (Miss.2008); see also 17A C.J.S. Contracts § 426 (2011). We find that the course of the parties’ performance is substantial evidence supporting the chancellor’s finding of their intent. The chancellor did not, as Stephen alleges, modify the parties’ agreement or reform it based on a mistake.
¶ 11. Stephen contends that the provision must be interpreted against Gloria because she drafted it. We accept that vagueness and ambiguity are more strongly construed against the party drafting the contract. Rotenberry, 864 So.2d at 270 (¶ 14). However, employment of the canons of construction is discretionary; construction against the drafting party can control the result, but not in all cases. West, 891 So.2d at 210-11 (V14). This canon may control where there is no strong evidence showing the parties’ intent, or if it is required to do equity where the drafting party was more knowledgeable about the subject matter of the contract. See Lee v. S. Miss. Elec. Power Ass’n, 17 So.3d 597, 601 (¶¶ 15-16) (Miss.Ct.App.2009). It may also control where the parties have unequal bargaining power. 17A C.J.S. Contracts § 425. But this case presents strong evidence of the parties’ intent; thus, the fact that Gloria drafted the provision at issue was just one factor to be considered by the chancellor.
¶ 12. Stephen also raises the issue of whether the chancellor erred in refusing to admit certain documents into evidence at the hearing on his motion for reconsideration. He contends that the documents were evidence that the parties had not made a mistake in drafting the property- *1226 settlement agreement. We see no merit to this argument, as the chancellor did not modify the property-settlement agreement, under a mistake theory or otherwise. A trial court’s decision to admit or exclude evidence will not be reversed unless a substantial right of a party is adversely affected. Robinson Prop. Group, L.P. v. Mitchell, 7 So.3d 240, 243 (¶ 9) (Miss.2009). The exclusion of irrelevant evidence cannot be reversible error.
¶ 13. Finally, although the issue has not been raised by the parties, the dissent would find that the award is, in part, an illegal assignment of Stephen’s social security benefits. This position is supported by some language in the property-settlement agreement: it does state that Stephen will remit to Gloria one-half of his retirement income, and the retirement plan selected by the parties includes social security benefits in the final tally to maintain its “level income.” However, the agreement also explicitly states that this award is alimony rather than property division or assignment. The alimony payments were due monthly for approximately two years before Stephen began receiving social security, and despite the change in the source, Stephen’s overall monthly retirement income remained the same. Moreover, a spouse’s income is a legitimate factor to be considered in awarding alimony. Armstrong, 618 So.2d at 1280. This is true of income from social security benefits, which although they cannot be divided as marital property, are still considered as separate property of each spouse. See Traxler v. Traxler, 730 So.2d 1098, 1102-1103 (¶ 23) (Miss.1998). Thus Stephen’s retirement benefits, including social security, were properly cited in the property-settlement agreement as a basis for the alimony award.
¶ 14. The parties are afforded wide latitude in entering property-settlement agreements. Steiner v. Steiner, 788 So.2d 771, 776 (¶ 17) (Miss.2001). Mississippi law favors settling disputes by agreements. In re Dissolution of the Marriage of De St. Germain v. De St. Germain, 977 So.2d 412, 420 (¶23) (Miss.Ct.App.2008). Our purpose in interpreting the parties’ agreement is to effectuate their intent, not frustrate it. It is clear from the record that the parties intended the award to be alimony. We conclude that the provision at issue is not an assignment of Stephen’s social security benefits.
¶ 15. We find that the property-settlement agreement is ambiguous as to whether the monthly alimony owed is fixed, but after reviewing the record, we conclude that the chancellor’s finding of the parties’ intent is supported by substantial evidence. Stephen’s arguments to the contrary are without merit.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. RUSSELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS AND CARLTON, JJ., NOT PARTICIPATING.

. Stephen repeatedly asserts that the chancellor did not find the agreement ambiguous, but we find this contention erroneous. While it is true that the chancellor did not use the word “ambiguous” when he announced his findings from the bench, he found the property-settlement agreement subject to "several different interpretations.” Even if this were not a clear finding of ambiguity, when the chancellor fails to make specific findings, we proceed on the assumption that he resolved the issues in favor of the appellee. Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990).