# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00922-COA

**EDMOND CLARK**                                                                 **APPELLANT**

**v.**

**MARY WESLEY**                                                                  **APPELLEE**

DATE OF JUDGMENT:                 05/06/2019
TRIAL JUDGE:                      HON. JAMES CHRISTOPHER WALKER
COURT FROM WHICH APPEALED:        HOLMES COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:           VALLRIE LANETTE DORSEY
ATTORNEY FOR APPELLEE:            JOHN MICHAEL GILMORE
NATURE OF THE CASE:               CIVIL - CONTRACT
DISPOSITION:                      AFFIRMED - 10/13/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Mary Wesley owns approximately forty-three acres of farm land in Holmes County, Mississippi. Edmond Clark leased the farm land from Wesley from at least 2005 through 2018. A dispute arose between Clark and Wesley when Clark presented Wesley with a lease for 2019 and Wesley declined to enter into it. Clark filed a "Petition for Emergency Temporary Restraining Order, Injunction, Declaratory Judgment[,] and Other Relief" in the Holmes County Chancery Court, requesting that the chancery court find that there existed a valid 2019 lease contract between the parties and that the chancery court prohibit Wesley from interfering with the lease and Clark's farming activities on the property. After Clark presented his case at an emergency hearing, Wesley moved to dismiss Clark's petition

pursuant to Mississippi Rule of Civil Procedure 41(b) on the ground that "upon the facts and the law the plaintiff has shown no right to relief." The chancery court granted Wesley's Rule 41(b) motion to dismiss.

¶2. Clark appeals, asserting that the chancery court erred when it dismissed his petition based upon a finding that the parties did not have a valid lease for 2019 and when it refused to grant his request for injunctive relief. For the reasons addressed below, we find that the chancellor did not manifestly err in finding that there was not a 2019 lease contract between the parties and in refusing to grant Clark's request for injunctive relief. We therefore affirm the chancery court's order of dismissal under Rule 41(b).

## PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

¶3. Wesley (lessor) and Clark (lessee) had entered into lease contracts since 2005, covering approximately forty-three acres of farm land that Wesley owned. On January 5, 2019, Clark presented Wesley with a lease contract for the 2019 crop year. Wesley declined to enter into it.

¶4. Three months later, on April 10, 2019, Clark filed a "Petition for Emergency Temporary Restraining Order, Injunction, Declaratory Judgment[,] and Other Relief" in the Holmes County Chancery Court, requesting the following relief:

> Petitioner requests that his petition be received and that this court enters an order restraining Respondent Mary Wesley from interfering with his lease and farming activities on the land, and further requests that the lease is determined to be valid for the remainder of the 2019 crop year.

¶5. An emergency hearing on Clark's petition took place on April 15, 2019. At this

2

hearing, Clark was the only witness to testify in support of his petition. His testimony and the seven exhibits admitted into evidence established, as stated above, that Wesley owned the subject forty-three or so acres of farm land and began leasing it to Clark in approximately 2005. Each year, Clark would present Wesley with a lease contract for the crop year "January 1 to December 31."

¶6. The record reflects that in 2018, Wesley leased forty-one acres to Clark under a "Lease Contract," dated January 18, 2018, for the 2018 crop year from January 1, 2018, to December 31, 2018. Both parties executed the 2018 lease contract on January 18, 2018. The lease contains the following provision:

> The term of this lease shall be 1 year(s) from Jan 1st , 2018 , to Dec 31st , 2018 , and this lease shall continue in effect from year to year thereafter until written notice of termination is given by either party to the other at least _____ months before expiration of this lease or any renewal.

¶7. Clark testified that on January 18, 2018, he gave Wesley a check dated with that same date for $5,500. Clark testified that this check was for the 2018 rent. A copy of this check was admitted into evidence. Wesley's counsel objected because it was only a copy of the check and that "it would be better if we had the returned check or something showing that nothing was added after." The chancery court overruled Wesley's objection. A review of the January 18, 2018 check shows "201[?] Rent" in the memo line. The last digit in "201[?]" appears that it may have been changed from a "7" to an "8."

¶8. The record reflects that Wesley contends that the January 18, 2018 check was back-payment for the 2017 crop year. Clark testified that he paid the 2017 rent in cash. A "copy

3

of a [carbon] copy" of a receipt was admitted into evidence, indicating a "5,500.00" payment for "Rent 2017." The receipt is dated, but the date is illegible except for the last two digits that appear to be "-16." Wesley's counsel objected to the receipt because it was "a copy, . . . [w]e don't know what has been added to it since that time." Clark testified he could not find the original copy of the receipt.

¶9. The chancellor specifically questioned Clark about the timing of the dispute between him and Wesley, recognizing that it began in 2017: "[I]t appears this whole matter kind of hinges on whether or not you [Clark] are behind a payment or up-to-date . . . [k]ind of starting around 2017, which happens to be the one year that you indicated you paid in cash?" Clark responded, "Yes, sir."

¶10. Some lease contracts for prior years admitted into evidence reflect that the annual rental payment would be paid at the end of the crop year covered by the lease contract. The parties' 2013 lease contract, for example, was completed to show that the "annual [rent] due" under the lease was to be paid on " 4th Dec. 13 ." When asked about this provision, Clark had no explanation for the specific wording in the 2013 lease contract reflecting that the annual payment on the lease would be due on December 4, 2013, of that crop year. Additionally, the record reflects that Clark made a handwritten notation on the 2018 lease contract, as follows: "I will be in contact with Mrs. Wesley on rent around December 1st cash years." Clark testified that this was in reference to payment for the 2019 crop year, but Clark also acknowledged that Wesley disputed that he paid the 2019 rent.

4

¶11.    On December 26, 2018, Clark testified that he gave Wesley a check for $5,500 dated with that same date. A copy of the December 26, 2018 check was admitted into evidence. The memo line on this check says "Rent." Clark testified that this check was prepayment for a 2019 lease, but Clark also testified Wesley told him that the December 26, 2018 check was payment for his 2018 rent and that he had not paid rent for 2019.

¶12.    Clark testified that "about the fifth of January [2019]," he brought a lease contract to Wesley for the crop year from January 1, 2019, until December 31, 2019. Wesley refused to sign it. Clark testified that Wesley would not sign it because "[s]he said . . . I hadn't paid her 2018 rent, which she also said I hadn't paid her for 2019 rent." The record reflects that there was confusion between Wesley and her daughter about the receipt and cashing of the December 26, 2018 check. Clark testified that he showed Wesley the cancelled December 26, 2018 check, and at that point Wesley told him that the money that he paid her in December 26, 2018, was for the 2018 rent. Clark testified that he said, "No, ma'am. The money I paid you is for 2019." Clark also testified that he requested, in writing, the reasons why Wesley would not lease the farm land to him and she sent him a letter dated March 19, 2019, setting out these reasons. The letter was not made a part of the record.

¶13.    In cross-examination, Clark confirmed that the last time he did anything on Wesley's property was "[i]n December [2018]." Earlier in his testimony, however, Clark testified that he had done some work on the property in January 2019. There is no written 2019 lease contract.

5

¶14. After Clark rested his case, Wesley moved to dismiss pursuant to Mississippi Rule of Civil Procedure 41(b) on the ground that "upon the facts and the law the plaintiff has shown no right to relief." The chancery court granted Wesley's Rule 41(b) motion to dismiss, setting forth its ruling on the record at the end of the hearing, as follows:

> The Court finds that the petition for emergency temporary restraining order, declaratory judgment, and actual requested relief herein, and there is a certain motion to dismiss same, the Court does not find that the movant has met their burden. As to the emergency request for preliminary injunction, does not appear to be substantial likelihood of prevailing as to those pled matters.

> Irreparable injury, it appears to be there might be some money issues that could potentially be dealt with. Whether or not there is a one-year lapse or lag time or paid up, I'm not real sure, but certainly not irreparable. As well as the other factors, the burden has not been met. So the motion to dismiss is granted.

> Again, if there wishes to be some amending of some pleadings as it relates to some sort of an accounting for this Court to potentially, if there is some declaratory relief that is also requested in the underlying permanent relief in MEC Docket Entry Number One, if there were some sort of request for declaratory relief as it relates to a finding that certain monies might or might not be owed related to the lease.

> But what is clear is there is no lease for 2019. That is just a matter of fact.

¶15. An order of dismissal was entered on May 6, 2019, nunc pro tunc to April 15, 2019, dismissing Clark's petition. The order also provided:

> The Plaintiff shall have the right to amend his request for Declaratory Judgment to seek return of any alleged rental reimbursements, and the Court may separately address whether or not the Plaintiff is owed any money from the Defendant.

Clark did not file any amendment to his pleadings. On June 5, 2019, Clark appealed from the chancery court's order of dismissal.

6

**STANDARD OF REVIEW**

¶16. Mississippi Rule of Civil Procedure 41(b) governs involuntary dismissals and "applies in actions tried by the court without a jury, where the judge is also the fact-finder." *All Types Truck Sales Inc. v. Carter & Mullings Inc.*, 178 So. 3d 755, 758 (¶13) (Miss. Ct. App. 2012) (internal quotation marks omitted). In relevant part, Rule 41(b) provides that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

¶17. Rule 41(b) also provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits." *See Sullivan v. Maddox*, 283 So. 3d 222, 234 (¶53) (Miss. Ct. App. 2019) ("[A] dismissal under Rule 41(b) is an adjudication on the merits of the case and is with prejudice."). Although the chancery court's order of dismissal contains language allowing Clark to amend his pleadings to seek to recover monetary relief, Clark did not do so. Clark chose to directly appeal from the order of dismissal. It therefore constitutes a final adjudication on the merits. M.R.C.P. 41(b).

¶18. In ruling on a Rule 41(b) motion, the chancery court "should grant a motion for involuntary dismissal if, after viewing the evidence *fairly*, rather than in the light most favorable to the plaintiff, the judge would find for the defendant." *Gulfport-Biloxi Reg'l Airport Auth. v. Montclair Travel Agency Inc.*, 937 So. 2d 1000, 1004 (¶13) (Miss. Ct. App.

7

2006); *see Stewart v. Merchants Nat. Bank*, 700 So. 2d 255, 259 (Miss. 1997) (On petition for writ of certiorari, the supreme court reversed the court of appeals' decision and reinstated the chancellor's decision granting a Rule 41(b) dismissal in a defendant's favor where "a fair reading of the evidence in the instant case would support a finding that Merchants was not liable to the [plaintiffs] for damages.").

¶19. Denial of a Rule 41(b) motion is warranted "only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Gulfport-Biloxi Reg'l Airport Auth.*, 937 So. 2d at 1004-05 (¶13) (internal quotation mark omitted). Further, a Rule 41(b) "motion should be granted if the plaintiff has failed to prove one or more essential elements of his claim or if the quality of the proof offered is insufficient to sustain the plaintiff's burden of proof." *Lewis v. Lewis*, 269 So. 3d 230, 235 (¶14) (Miss. Ct. App. 2018) (quoting *Buelow v. Glidewell*, 757 So. 2d 216, 220 (¶12) (Miss. 2000)).

¶20. "In reviewing a trial court's grant or denial of a Rule 41(b) motion for involuntary dismissal, we apply the substantial evidence/manifest error standards." *Gulfport-Biloxi Reg'l Airport Auth.*, 937 So. 2d at 1005 (¶13). "[A] chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility." *Hunt v. Hunt*, 289 So. 3d 313, 318 (¶16) (Miss. Ct. App. 2019). Accordingly, "we defer to the trial court's findings of fact but review de novo legal conclusions." *Aronson v. Univ. of Miss.*, 828 So. 2d 752, 755 (¶12) (Miss. 2002).

8

**DISCUSSION**

## I.     The Alleged Existence of a Valid 2019 Lease Contract

### A.     The Automatic Renewal Provision in the 2018 Lease Contract

¶21.    Clark asserts that the chancery court erred when it did not find that the automatic renewal provision in the parties' 2018 lease contract created a lease for the 2019 crop year. Clark asserts that a lease for the 2019 crop year came into effect when Wesley did not provide Clark with written notice of termination before December 31, 2018, when the 2018 lease contract expired. Clark asserts that the contract is not ambiguous, but Clark does not specifically address whether an ambiguity exists in the automatic renewal provision at issue here. As we explain below, we find as a matter of law that this provision is ambiguous, and we further find no manifest error in the chancery court's determination that "there is no lease for 2019" in this case.

¶22.    We first address whether the automatic renewal provision in 2018 lease is ambiguous. "The question of whether a contract is ambiguous is a matter of law[.]" *Hicks v. N. Am. Co. for Life & Health Ins.*, 47 So. 3d 181, 185 (¶16) (Miss. Ct. App. 2010). We review questions of law de novo. *Aronson*, 828 So. 2d at 755 (¶12). In *Dalton v. Cellular South Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009), the Mississippi Supreme Court recognized that "[a] conflict within the whole [contract] meets the very definition of ambiguity. An ambiguity is defined as a susceptibility to two reasonable interpretations." (Internal quotation mark omitted). Continuing, the supreme court explained that "[a]n 'ambiguous' word or phrase

9

is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." *Id.* (quoting *Walk-In Med. Ctrs. Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)).

¶23. Our examination of the 2018 lease contract at issue here reveals that it appears to be a form contract with blanks to be completed by the parties. The automatic renewal clause in the 2018 lease was not completed by the parties. That provision had only a blank line regarding any time within which to furnish written notice of termination. Importantly, all other blanks in the 2018 lease agreement were filled in with the required information. Thus, in reviewing the "context of the entire . . . agreement," we find as a matter of law that the blank in the automatic renewal provision creates an ambiguity as to whether the parties intended to be bound by this provision when compared to every other blank in the lease agreement, which are all completed. *Id.*; *see, e.g.*, *Knipmeyer v. Diocese of Alexandria*, 492 So. 2d 550, 556 (La. Ct. App. 1986) (finding that ambiguity existed as to the parties' intent regarding notice of nonrenewal of employment contract where line for date certain to be filled in was left blank).

¶24. Once an ambiguity exists, as we have found here, "the subsequent interpretation of an ambiguous contract is a finding of fact" for the chancery court. *Phillips v. Enter. Transp. Serv. Co.*, 988 So. 2d 418, 421(¶13) (Miss. Ct. App. 2008). In resolving the ambiguity, the chancery court may consider parol evidence, including the parties' course of conduct. *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 414 (¶40) (Miss. 2018); *Reffalt v.*

*Reffalt*, 94 So. 3d 1222, 1225 (¶10) (Miss. Ct. App. 2011) ("As the property-settlement agreement is ambiguous, the chancellor properly considered parol and other evidence."). We find no manifest error in the chancery court's finding that "there is no lease for 2019."

¶25.     In the *2012* lease that Clark attached to his petition, the parties indicated an intent to be bound by the automatic renewal provision because they *completed* it by filling in the blank line with a "1", thus requiring "__1__ month[] [written notice of termination] before expiration of [the] lease." Similarly, in the 2013 lease, the parties completed the automatic renewal provision. This demonstrates that the parties were aware of this provision, and if they intended to be bound by it they would complete it. In contrast, the *2018* lease agreement had only a blank line regarding any time within which to furnish written notice of termination, indicating the parties had no intent to be bound by the automatic renewal provision.

¶26.     Further, the parties' course of dealing supports a finding that there was no intent to be bound by an automatic renewal provision—regardless of whether the automatic renewal provision was completed. As Clark confirmed in his testimony, the parties would enter into a new lease agreement "on a year-to-year basis in January or thereabouts, . . . December, January." Additionally, the record contains copies of leases from prior years that show that terms of the leases changed over the years, including the specific amount of acres under the lease (ranging from fifty to forty-one acres) and a change in annual rent from $5,000 to $5,500. Clark presented these leases to Wesley in "December, January" for her

11

consideration. According to Clark, this was the parties' course of dealing each year.

¶27. In arguing before the chancery court that the automatic renewal provision in the *2018* lease agreement should be enforced, Clark's counsel relied on the *2012* lease agreement that Clark attached to his petition. When shown the 2012 lease agreement by Clark's counsel, the chancery court stated, "That is not the current lease. The last lease indicated it was a blank no notice. Obviously some notice, like there has been some sort of ad hoc process that y'all have been going forward." In making this observation, the chancery court did *not* find that some *prior* notice was required, as Clark appears to argue. Rather, the chancery court simply recognized that the parties' course of dealings in this context was for the parties to decide, "on an ad hoc basis," in "December, January" whether to enter into a lease agreement for the coming crop year and what the terms of the new lease would be. Should one or both parties decide not to go forward, it was reasonable for the chancery court to infer from this standard practice that they would notify the other at that time. Indeed, that is precisely what happened with respect to the proposed 2019 lease. Clark presented Wesley with the proposed 2019 lease on January 5, and at that time she told him she was not going to enter into a lease with him for the 2019 crop year.

¶28. Accordingly, we find that on this record the chancery court did not manifestly err in finding that there was no 2019 lease contract and in rejecting Clark's assertion that the automatic renewal provision in the 2018 created a lease contract for the 2019 crop year. To reiterate our deferential standard of review, a chancery court's finding of fact "will not be

12

disturbed on appeal unless it was manifestly wrong." *Lewis*, 269 So. 3d at 238 (¶25). It is the chancery court's role to weigh the credibility of the plaintiff's evidence. *Hunt*, 289 So. 3d at 318 (¶16). To the extent that Clark offered evidence in his favor, the chancery court was "not required to look at the evidence in the light most favorable to [Clark]," nor was [it] required to give him "the benefit of all favorable inferences." *Lewis*, 269 So. 3d at 238 (¶25). Rather, we will reverse the chancery court's granting of a Rule 41(b) motion to dismiss "only if [it] would have been obliged to find for [Clark] if [Clark's] evidence were all the evidence offered in the case." *Id.* (internal quotation mark omitted). In this case, we do not find Clark's evidence "so compelling as to oblige the chancellor to find in his favor," *id.*, and we therefore affirm the chancery court's decision on this point.

### B. Oral Agreement

¶29. Clark asserts that the chancery court erred in not finding that the parties entered into a valid oral agreement for Clark to lease Wesley's property for the 2019 crop year. We find no merit in this argument for the reasons addressed below.

¶30. Clark asserts that when Wesley cashed his December 26, 2018 check on December 27, 2018, she "accepted" his offer to farm her land for 2019. We begin our discussion of this point by recognizing that "[t]he elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *GGNSC Batesville LLC v. Johnson*, 109 So. 3d 562, 565 (¶16) (Miss.

13

2013).

¶31. In this case, there is no proof at all of a "mutual assent" between the parties with respect to a 2019 lease. Clark's own testimony makes clear that Wesley believed that the $5,500 check Clark gave to her on December 26, 2018, was for the preceding (2018) crop year, not prepayment for the 2019 crop year. Further Clark himself admitted that this case "hinges on whether or not [he was] behind a payment or up-to-date . . . starting around 2017."

¶32. Clark also asserts that there was an oral contract for the 2019 crop year because Wesley allowed him to begin prepping the land. Clark's testimony on this point is conflicting. In his direct examination, Clark testified that he "started prepping the land back in January; sprayed it, burned it down. And got some of it, preparing it, trying to prepare to plant corn." During cross examination, however, Clark testified that the last time he did anything on Wesley's property was "in December," and he acknowledged that at that time he still had a lease on the property, as follows:

> [COUNSEL FOR WESLEY:] So when was the last time you did anything on her property?
>
> [CLARK:] In December.
>
> [COUNSEL FOR WESLEY:] But you still had a lease on it in December? . . . . You still had a lease in December, right? You had the rights to go on there?
>
> [CLARK:] Yes, sir.

| | |
|---|---|
| [COUNSEL FOR WESLEY:] | So you sprayed grass in December when the grass was dead? Why would you do that? |
| [CLARK:] | I sprayed – okay, I sprayed Roundup to kill the rye grass. And I sprayed Gramoxone to kill all the vegetation. And then I also cut the stalks in December. |
| [COUNSEL FOR WESLEY:] | But you still had a lease on it in December? |
| [CLARK:] | I had what, sir? |
| [COUNSEL FOR WESLEY:] | You still had a lease in December, right? You had the rights to go on there? |
| [CLARK:] | Yes, sir. |
| [COUNSEL FOR WESLEY:] | But after January 1st, 2019, you didn't have any rights to go on there? |
| [CLARK:] | That's right. |
| [COUNSEL FOR WESLEY:] | And January 5th, she told you she wasn't going to renew your lease and you don't go back on there? |
| [CLARK:] | Yes, sir. |

¶33.   The chancery court heard Clark's testimony and reviewed all the exhibits admitted into evidence. As the "only one to hear [Clark's] testimony . . . and observe [his] demeanor," we defer to the chancellor's finding that there was no 2019 lease contract in this case, and we find no manifest error in the chancery court's determination. We recognize that the chancery court did not express, in detail, its rationale for determining that there was no 2019

15

lease contract. In this regard, however, we find instructive this Court's recognition that "a chancellor will be affirmed where he reaches a correct result under the law and facts . . . [, and] if the judgment of the court can be sustained for any reason, it must be affirmed[.]" *The Pennington Grp. LLC v. PriorityOne Bank*, 228 So. 3d 880, 886 (¶16) (Miss. Ct. App. 2017) (citations and internal quotation marks omitted).

¶34. We apply this principle here. The record reflects that the parties clearly disputed whether the December 26, 2018 payment was for the 2018 lease contract or pre-payment for 2019. As such, we find no evidence that there was "mutual assent" between the parties, which is an essential element of Clark's oral contract claim. *See Lewis*, 269 So. 3d at 235 (¶14) (finding that a Rule 41(b) motion should be granted where the plaintiff has failed to prove an essential element of her claim).

¶35. With respect to Clark's argument that Wesley's "silence" in allowing him to continue to farm the land after the 2018 lease contract expired, Clark gave conflicting testimony whether he even went on the property in 2019. Further, Clark admitted that he knew on January 5, 2019 (within five days after the 2018 lease contract expired) that Wesley was not going to enter into the 2019 lease contract and that he was not to go on her property. On this record, we find that a fair consideration of the evidence would allow the chancery court to find in Wesley's favor regarding Clark's post-December 31, 2018 assertions. For this additional reason, we find no manifest error in the chancery court's determination on this issue.

## II. Preliminary Injunction

¶36. Clark asserts that the chancery court erred in denying injunctive relief in this case, raising only his request for a preliminary injunction (and not for a temporary restraining order) on appeal. As this Court has recognized:

> [B]efore issuing a preliminary injunction, a chancellor must balance the following factors: (1) whether a substantial likelihood exists that the plaintiff will prevail on the merits; (2) whether the injunction is necessary to prevent irreparable injury; (3) whether threatened injury to the plaintiff outweighs the harm an injunction might cause to the defendant; and (4) whether the entry of a preliminary injunction is consistent with the public interest.

*Lauderdale v. DeSoto County*, 96 So. 3d 1091, 1101 (¶30) (Miss. Ct. App. 2016). "The plaintiff must prove [each of] these factors by a preponderance of the evidence." *Id.*

¶37. Regarding the first factor, the chancery court considered the "actual requested relief" in Clark's petition, namely, that the chancery court enter an order restraining Wesley from interfering with his farming activities on the land and determine that the lease is valid for the remaining 2019 crop year. With respect to this "actual requested relief," the chancery court found that "[it] does not appear to be substantial likelihood of prevailing as to those pled matters." For the reasons addressed above, we find no manifest error in this finding.

¶38. The Mississippi Supreme Court has recognized that with respect to the second "irreparable injury" factor, "[i]nadequacy of a remedy at law is the basis upon which the power of injunction is exercised. An application for a preliminary injunction is a matter committed to the chancery court's sound discretion." *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 568 (¶18) (Miss. 2010) (citation omitted).

17

¶39. The chancery court found in this case that "it appears to be there might be some money issues that could potentially be dealt with. Whether or not there is a one-year lapse or lag time or paid up, I'm not real sure, but certainly not irreparable." The chancery court's order of dismissal even gave Clark "the right to amend his request for Declaratory Judgment to seek return of any alleged rental reimbursements, and the Court may separately address whether or not [Clark] is owed any money from [Wesley]."

¶40. We find no manifest error in the chancery court's finding on this factor. That Clark chose not to pursue monetary damages does not support a finding of irreparable injury. Clark testified that when Wesley told him she would not sign the 2019 lease contract, he requested his money back. According to Clark, Wesley refused to do so and has not given his money back to date. Thus Clark's testimony shows he understood that this was a remedy available to him. Clark chose not to pursue it.

¶41. Clark asserts on appeal that "[h]e had no other alternative for 2019 [than to seek an injunction because] he had not received prior written notice of non-renewal." According to Clark, when he filed his petition, he had only "approximately two weeks to plant before suffering substantial losses to his 2019 crop." These assertions do not persuade us to find that the chancery court manifestly erred in finding that Clark had failed to meet his burden of proof that "irreparable" injury existed in this case.

¶42. The record reflects that Clark did not file his petition for emergency relief until April 10, 2019—just "two weeks" before he needed to plant his crops before "suffering substantial

18

losses," as Clark asserts in his appellant's brief. But Clark testified that Wesley told him on *January 5,* 2019*,* that she would not enter into the 2019 lease. Clark also testified that he learned in January that Wesley was looking for another lessee because "an individual called [Clark] and asked [him], 'Are you going to work Ms. Wesley's land?' I said, 'Yeah, I done paid her rent.' I said, 'Why?' He said that her nephew had contacted him about working the land. That was in January." We find that Clark's three-month delay in seeking his emergency injunctive relief undercuts his "irreparable harm" assertions. We find further that the chancery court was certainly well within in its discretion in taking these circumstances into consideration in assessing the "irreparable harm" factor. *See* 2 Jeffrey Jackson, Donald Campbell & Justin Matheny, *Mississippi Civil Procedure* § 28:3, Westlaw (database updated May 2020) ("Equitable considerations—consistent with laches principles—may also justify denying a TRO or preliminary injunction in appropriate circumstances[.]").

¶43.    The chancery court also found that Clark did not meet his burden of proving the last two factors he must prove before the court may issue an injunction, that the threatened harm to Clark outweighed the potential harm to Wesley, and whether an injunction would be consistent with the public interest.

¶44.    As to the third factor, the record contains evidence of Clark's threatened harm and also evidence of the potential harm to Wesley if a preliminary injunction were issued. Clark testified that Wesley told him on January 5, 2019, that she was not entering a lease with him, and Clark further testified that Wesley was in search of a new lessee in January. The

19

issuance of a preliminary injunction would have forced Wesley to halt that process, or it would have affected any lease Wesley may have entered into in the three months before Clark filed his petition. In any event, even if there had been sufficient evidence to show that Clark's threatened harm outweighed these potential ramifications to Wesley, the law requires that Clark prove by a preponderance of the evidence each of the four factors necessary to issue a preliminary injunction.

¶45. In this regard, we have already found above that the chancery court did not err in determining that Clark did not meet his burden of proving the first two requisite factors. As to the final factor, even in his appellant's brief, Clark points to no proof in the record, or even argument, relating to how a preliminary injunction issued under the circumstances of this case would be in the public interest. Clark wholly failed to prove this final factor. For these reasons, we find no manifest error in the chancery court's order.

¶46. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**